**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Luis E. GARCIA–DUARTE,
Defendant-Appellant.**

**No. 1067, Docket 82–1411.**

United States Court of Appeals,
Second Circuit.

Argued March 29, 1983.
Decided Sept. 21, 1983.

GEORGE C. PRATT, Circuit Judge:

Luis E. Garcia-Duarte appeals from a judgment entered after a jury trial in the District Court for the Southern District of New York (John M. Cannella, *Judge*), convicting him of conspiracy to distribute and possess with intent to distribute cocaine, 21 U.S.C. § 846, and possession of cocaine with intent to distribute, 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A). He was sentenced to five years and a $15,000 fine on the conspiracy count and to five years' unsupervised probation on the substantive count.

On appeal Garcia-Duarte challenges (1) the admission into evidence of an alleged coconspirator's "customer book"; (2) the sufficiency of the evidence on the conspiracy count; (3) the refusal of the trial judge to give a lesser-included offense charge on the substantive count; (4) the wording of the trial judge's "uncalled witness" charge; and (5) the quality of the government's presentation to the grand jury. We conclude that admission of the customer book was erroneous, and that without it the evidence was insufficient to support Garcia-Duarte's conspiracy conviction; accordingly, we reverse and dismiss Count One of the indictment. On Count Two, because Garcia-Duarte was entitled to a charge on the lesser-included offense of simple possession, we reverse and remand for a new trial. This makes it unnecessary to consider whether Garcia-Duarte was prejudiced by the challenged uncalled witness charge. Finally, the defects in the government's grand jury presentation, while regrettable, could only have affected the conspiracy count and are therefore moot.

Michael S. Feldberg, Asst. U.S. Atty., S.D.N.Y., New York City (John S. Martin, Jr., U.S. Atty., S.D.N.Y., Walter P. Loughlin, Asst. U.S. Atty., New York City, of counsel), for plaintiff-appellee.

Don D. Buchwald, New York City (Buchwald & Kaufman, New York City, of counsel), for defendant-appellant.

Before KEARSE, PIERCE and PRATT, Circuit Judges.

## FACTS

On May 10, 1982, Edgar Echeverri was shot to death in Queens, New York. New York City detectives who arrived at the scene of the murder found a small telephone book containing various names and telephone numbers on Echeverri's body. Among the dozens of names in the book was "Luis Pica", followed by the present and former telephone numbers registered to

defendant Garcia-Duarte's common-law wife.

Detectives who searched Echeverri's apartment in Elizabeth, New Jersey the next day found approximately one pound of cocaine, $40,000 in cash, and three notebooks. Special agent William Mockler of the federal Drug Enforcement Administration (DEA) testified as an expert that the entries in one of the notebooks reflected narcotics transactions with various individuals. Each page of this "customer book" had a name at the top and contained a series of dates and corresponding figures which represented quantities of narcotics sold and prices paid. The very first page bore the name "DN LOUIS P." and appeared to record sales of 125 grams of cocaine for $7,250 on August 26, 250 grams for $14,500 on September 6, and 125 grams for $7,250 on November 19.

Almost one month after the search of Echeverri's apartment, on June 7, 1982, a group of New York City detectives and DEA agents proceeded to Garcia-Duarte's Manhattan apartment, rang the bell, and knocked on the door. A woman's voice asked who was there, and the officers identified themselves as the police. After a series of delays which the government claims amounted to approximately 15 or 20 minutes, they were allowed to enter.

Inside the apartment the officers found Garcia-Duarte, his wife, and a young boy. They immediately began questioning Garcia-Duarte and his wife, primarily in English, but with Detective Pena, who was fluent in Spanish, translating when necessary. Garcia-Duarte acknowledged that the telephone numbers listed for "Luis Pica" in Echeverri's telephone book had been his and his wife's for some time, but he denied knowing Echeverri. Both he and his wife said that they were unable to identify photographs of Echeverri and his wife. However, they did identify another woman in one of the photographs found in Echeverri's apartment as a "Marie or Mariella", whom they had met several years earlier and had seen on several occasions since.

After explaining the circumstances surrounding Echeverri's murder, the officers asked Garcia-Duarte if he had any drugs or weapons in the apartment. When he claimed he did not, Detective Pena asked in Spanish if the officers could search the apartment. Garcia-Duarte replied, "Go right ahead, I have nothing to hide."

DEA agent Vallely, the only searching officer to appear as a witness, testified that he personally found evidence of cocaine in virtually every room of Garcia-Duarte's apartment. In a waste paper basket in the kitchen, he found three dripping wet, cold plastic bags containing water and white residue later determined to be cocaine. In the bathroom, he found a clear plastic bag, also containing what was later determined to be cocaine residue, wedged inside the drain in the sink. In a closet in the master bedroom area, he discovered a small clear plastic bag containing .23 gram of cocaine in a bathrobe pocket. In the living room, he found a small scale, together with a plastic calendar card covered with white residue, a small black sifter, and a metal cup. Finally, Vallely testified that he saw DEA agent Crawford seize a magazine from the top of the dining room table. This turned out to be a 1975 issue of "New York State Vacationland" with a label addressed to "M. Echeverri, Box 116, Elizabeth, New Jersey 07207".

Following his arrest, Garcia-Duarte admitted to the officers and again, the following day, to an Assistant United States Attorney, that the small quantity of cocaine found in the bathrobe was his and had been there for a long time. However, he denied knowledge of any of the other cocaine allegedly found in his apartment. He speculated that the bags containing the residue had perhaps been left by friends who visited over the weekend.

## DISCUSSION

A. *The Admissibility of Echeverri's Customer Book*

We consider first Garcia-Duarte's argument that the district judge erred in admitting Echeverri's customer book into evi-

dence. Garcia-Duarte objected to the document on both relevance and hearsay grounds. Judge Cannella overruled both objections. With respect to the relevance objection, he correctly ruled:

> I think there is more to this than just trying to connect this to the defendant himself * * *.
>
> [T]he government is also entitled in this case in the conspiracy charge to show that there were activities with Louie P. [sic], regardless of whether they are connected with [Garcia-Duarte] * * *.

With respect to the hearsay objection, Judge Cannella originally suggested that all three notebooks discovered at Echeverri's apartment could be admitted as hearsay exceptions under Fed.R.Evid. 803(6), since "[t]hey are in effect books kept by this fellow in the regular course of his business." Later, he ruled definitively, although without explanation, that the customer book could be admitted as the statement of a coconspirator. *See* Fed.R.Evid. 801(d)(2)(E); *United States v. Geaney,* 417 F.2d 1116 (2d Cir.1969), *cert. denied,* 397 U.S. 1028, 90 S.Ct. 1276, 25 L.Ed.2d 539 (1970).

■ We agree with Garcia-Duarte that the admission of Echeverri's customer book was erroneous. To begin with, it could not properly have been admitted under the "Records of regularly conducted activity" hearsay exception, Fed.R.Evid. 803(6), because there was an insufficient foundation to satisfy the prerequisites of that exception. *See United States v. Terry,* 702 F.2d 299, 320 n. 22 (2d Cir.1983); *cf. United States v. McGrath,* 613 F.2d 361, 367–68 (2d Cir.1979), *cert. denied,* 446 U.S. 967, 100 S.Ct. 2946, 64 L.Ed.2d 827 (1980); *United States v. Baxter,* 492 F.2d 150, 164 (9th Cir.1973), *cert. denied,* 416 U.S. 940, 94 S.Ct. 1945, 40 L.Ed.2d 292 (1974). The government established at best that a record of drug transactions was found in the apartment of the deceased Echeverri. Nothing else connected the record with Echeverri. Unlike *McGrath, supra,* there was no evidence that the entries were made in Echeverri's handwriting. Unlike *Baxter, supra,* there was no testimony that Echeverri kept the record himself, or was familiar with the record-keeping.

More is needed than simply finding a record book of drug transactions together with money and cocaine in the apartment of the victim of a recent murder for the book to qualify for admission under Rule 803(6). Indeed, on appeal the government does not even defend the trial court's ruling on this ground.

■ Furthermore, under *United States v. Geaney, supra,* the customer book should not have been admitted as a coconspirator's statement. Fed.R.Evid. 801(d)(2)(E) provides that an out-of-court statement offered to prove the truth of the matter asserted is nevertheless admissible against a party as non-hearsay if made by a coconspirator of the party during the course and in furtherance of the conspiracy. *Geaney* and its progeny establish that for the statement of an alleged coconspirator to be used against a defendant, the government must demonstrate by a fair preponderance of the independent non-hearsay evidence that the defendant was in fact a member of the conspiracy. *United States v. Terry,* 702 F.2d at 320; *United States v. Cicale,* 691 F.2d 95, 103 (2d Cir.1982); *United States v. Geaney,* 417 F.2d at 1120. While the standard for independent proof of membership in the conspiracy "is not as high as that needed to submit a charge of conspiracy to the jury," *United States v. Terry,* 702 F.2d at 320; *United States v. Alvarez-Porras* 643 F.2d 54, 57 (2d Cir.), *cert. denied,* 454 U.S. 839, 102 S.Ct. 146, 70 L.Ed.2d 121 (1981), and the proof may be "totally circumstantial," *United States v. Terry,* 702 F.2d at 320 (quoting *United States v. Ragland,* 375 F.2d 471, 477 (2d Cir.1967), *cert. denied,* 390 U.S. 925, 88 S.Ct. 860, 19 L.Ed.2d 987 (1968)), nevertheless the totality of the independent evidence marshalled by the prosecution must establish at least the "likelihood of an *illicit* association between the declarant and the defendant." *United States v. Terry,* 702 F.2d at 320 (quoting *United States v. Ragland,* 375 F.2d at 477) (emphasis added in *Terry* ).

Applying these standards, we conclude that the independent non-hearsay proof of Garcia-Duarte's participation in a conspiracy with Echeverri was not sufficient to support the admission of Echeverri's customer book. The telephone book found on Echeverri's body, containing the "Luis Pica" entry with two telephone numbers traceable to Garcia-Duarte, did not refer to narcotics dealings. The magazine found in Garcia-Duarte's home and addressed to "M. Echeverri" in Elizabeth, New Jersey was no more sinister. Further, the government never suggested, much less established, any specific connection between the pound of cocaine discovered in Echeverri's apartment, which ranged in purity from 78.5% to 93.2%, and the .23 gram that was discovered one month later in Garcia-Duarte's bathrobe, which had a purity of 24.5%.

Even when viewed in the light most favorable to the government, the most this evidence showed was that both Echeverri and Garcia-Duarte were drug dealers and that they were acquainted. We have consistently held, however, that "[m]ere familiarity with a drug dealer does not make one a member of his conspiracy; nor does association with a conspirator provide a sufficient basis for the admissibility of hearsay statements of an alleged co-conspirator." *United States v. Terry*, 702 F.2d at 320; *see United States v. Steinberg*, 525 F.2d 1126, 1134 (2d Cir.1975), *cert. denied*, 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976); *United States v. Fantuzzi*, 463 F.2d 683, 690 (2d Cir.1972); *United States v. Ragland*, 375 F.2d at 477; *see also United States v. Fitzharris*, 633 F.2d 416, 422–23 (5th Cir.1980), *cert. denied*, 451 U.S. 988, 101 S.Ct. 2325, 68 L.Ed.2d 847 (1981). In *United States v. Steinberg, supra*, there was overwhelming evidence that Steinberg participated in a large scale narcotics distribution conspiracy. There was also competent evidence that Steinberg's alleged coconspirator, defendant Parker, engaged in narcotics transactions at Steinberg's apartment. This court nevertheless held that although the independent evidence established that Parker and Steinberg "were friends and fellow drug users", 525 F.2d at 1134, it did not provide a sufficient basis for the admission of Steinberg's hearsay statement against Parker as the statement of a coconspirator. *Id.*

Similarly here, the connection between Garcia-Duarte and Echeverri was insufficient to permit the introduction against Garcia-Duarte of Echeverri's customer book as the statement of a coconspirator. Even assuming that the book was Echeverri's, the independent non-hearsay evidence simply did not establish that Garcia-Duarte and Echeverri were participants in the same cocaine conspiracy.

Recognizing the inherent weakness of its *Geaney* argument, the government argues alternatively that Echeverri's customer book was admissible as "non-hearsay evidence" that someone known as "DN LOUIS P." had narcotics dealings with Echeverri. It claims that the jury could then infer from other evidence in the case that this "someone" was Garcia-Duarte.

We think this argument is fundamentally misconceived. To the extent that the customer book was introduced to prove that Echeverri had narcotics dealings at all, whether with Garcia-Duarte, Luis Pica, DN LOUIS P., or someone else, its evidentiary significance depended solely on the truth of the matter asserted. Such use of the book would fall squarely within the definition of hearsay in Rule 801(c) that is excluded by Rule 802.

The government attempts to escape this conclusion by relying on *United States v. Lieberman*, 637 F.2d 95 (2d Cir.1980), which involved the admissibility of a hotel registration card. The card itself was a business record, *see* 637 F.2d at 100–01 n. 8, and since no challenge to its authenticity was raised, it was competent to establish the truth of a number of facts: the name of the hotel, the date and time of registration, and the room assigned to the registrant, none of which were disputed. At issue in *Lieberman* was whether the card could be used to

show the identity of the registrant. We held that it could not, but that it was admissible for the non-hearsay purpose of showing that someone calling himself by a particular name had checked into the hotel. *Id.* at 101. Other evidence established that twenty-one minutes later someone had placed a telephone call from that assigned room to defendant Lieberman's unlisted number. The signing of the card and the making of the call, together with other evidence, constituted circumstantial proof of both the overall *modus operandi* of the drug conspiracy and of defendant Lieberman's participation in it. While the identity of the guest who checked into the hotel was also quite obviously at issue in the case, the government introduced other evidence to establish that the person whose name appeared on the card was in fact the person who used the room.

In the present case, Echeverri's customer book lacks the underlying, undisputed authenticity of the hotel registration card in *Lieberman.* Moreover, even if we were to assume that after its abbreviated entries were explained by the government's expert, the document was self-authenticating as a cocaine dealer's ledger, *see United States v. McGrath,* 613 F.2d at 368, and if we were to further assume that it was Echeverri's ledger, it still would be admissible only for the purpose of establishing that Echeverri himself was a cocaine dealer. Until other independent evidence established who the members of Echeverri's cocaine conspiracy were, the customers' names would not be admissible to establish their identities. Thus, the customer book could not be admitted to show that Echeverri sold cocaine to someone called "DN LOUIS P."

Without Echeverri's customer book, there was insufficient evidence to support Garcia-Duarte's conspiracy conviction. Since there is no suggestion by the government that any more evidence of Garcia-Duarte's participation in a conspiracy with Echeverri could be produced on a retrial, we not only reverse the conviction but direct dismissal of the conspiracy count. *See United States v. Edmons,* 432 F.2d 577, 586 (2d Cir.1970); *cf. United States v. Steinberg,* 525 F.2d at 1134–35 (Friendly, J., concurring and dissenting).

### B. Garcia-Duarte's Request for a Lesser-Included Offense Charge

Garcia-Duarte also argues that he is entitled to a new trial on the substantive count of possession with intent to distribute, because Judge Cannella denied his request for a charge on the lesser-included offense of simple possession. We agree.

It is well-settled that where a lesser offense is necessarily included within the offense charged, a defendant is entitled as a matter of right to a charge on the lesser-included offense "if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit of the greater." *Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973); *see United States v. Giampino,* 680 F.2d 898, 901 (2d Cir.1982). It is equally clear "that the crime of simple possession, in violation of [21 U.S.C.] § 844, is lesser than and wholly included within the crime of possession with intent to distribute, in violation of [21 U.S.C.] §§ 812, 841(a)(1), and 841(b)(1)(A)." *United States v. LoRusso,* 695 F.2d 45, 52 n. 3 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1525, 75 L.Ed.2d 948 (1983).

From the evidence in this case, the jury could rationally have concluded that Garcia-Duarte possessed cocaine, but had no intent to distribute it. The only quantifiable amount of cocaine found in Garcia-Duarte's apartment was the .23 gram in his bathrobe. Its purity, 24.5%, was not far removed from the 15%–20% range that agent Mockler testified one would expect to find at street level. There was also testimony from agent Vallely that the strainer and metal cup found in Garcia-Duarte's apartment are of a type "used occasionally for personal use."

To be sure, as even Garcia-Duarte concedes, there was also evidence from which the jury could rationally have concluded that Garcia-Duarte was guilty of the greater offense. The delays which the officers experienced at Garcia-Duarte's front door, coupled with the subsequent discovery of dripping wet plastic bags containing cocaine residue, certainly pointed in this direction. But the jury was by no means required to accept the government's version of these events, particularly in view of the numerous inconsistencies in agent Vallely's testimony that emerged on cross-examination. Among other things, the defense established that Vallely misrepresented the spelling of the "DN LOUIS P." entry in Echeverri's customer book both before the grand jury and in the complaint which was presented to the magistrate after Garcia-Duarte's arrest. Vallely also implied in the complaint that cocaine "spoons" had been found in Garcia-Duarte's apartment, but at trial he admitted that these "spoons" were merely normal kitchen spoons. In addition, there were several significant discrepancies between Vallely's oral testimony and his written reports as to the time and place of the seizures in Garcia-Duarte's home. Further, Vallely originally testified that he brought the alleged residue exhibits to a chemist on June 7th, only to later admit that his testimony in the grand jury ten days later, on June 17th, had been given *before* he brought the cocaine exhibits to the chemist.

Given the serious challenge to Vallely's credibility, the jury was entitled to reject his testimony, in whole or in part, and to accept defendant's evaluation of the evidence. Judge Cannella's refusal to charge on the lesser-included offense deprived the jury—and Garcia-Duarte—of this opportunity.

Moreover, even if the jury believed Vallely, the inferences to be drawn from his testimony were clearly open to dispute. The cocaine residue may very well have been part of a substantially larger stash of cocaine that had been thrown out during the delay that occurred when the agents arrived at Garcia-Duarte's apartment. However, that delay might also have resulted from the fear of Garcia-Duarte and his wife that they were about to be arrested as illegal aliens. Furthermore, there remained the question of whether any additional amount of cocaine that had been in the apartment was still consistent with personal use.

Contrary to the government's contention, therefore, the issue of intent to distribute was clearly in dispute, and the district judge erred by not submitting to the jury the lesser included offense charge of possession.

## C. Inaccuracies in the Government's Grand Jury Presentation

Garcia-Duarte's final argument is that the indictment should be dismissed due to improprieties before the grand jury. Since all of the matters objected to related to the conspiracy charge, which we are dismissing, there is no need to review them any further than to note our hope and expectations that the careless inaccuracies presented to the grand jury in this case do not recur. *See United States v. Hogan,* 712 F.2d 757 (2d Cir.1983), and cases cited therein.

## CONCLUSION

Count One is reversed and dismissed. Count Two is reversed and remanded for a new trial.