**UNITED STATES of America,**

**v.**

**Guillermo CANOVA, et al., Defendants.**

**No. SS 85 Cr. 1000 (SWK).**

United States District Court,
S.D. New York.

July 2, 1986.

Roger Bennett Adler, New York City, for defendant Canova.

Rudolph Giuliani, U.S. Atty., S.D.N.Y. by Deborah J. Stavile, New York City, for U.S.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

On April 18, 1986, a jury convicted defendant Guillermo Canova [1] of one count of conspiracy to sell heroin and cocaine and one count of distribution of and possession with intent to distribute heroin. On the same day, the jury convicted Canova's codefendant, Dominick Barca, of one count of conspiracy and one count of possession with intent to distribute heroin.

This case is presently before the Court on defendant Canova's motion pursuant to Fed.R.Crim.P. 33 to set aside the jury verdict and for a new-trial on the grounds that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution barred the United States from prosecuting Canova on the conspiracy count, that the Court's refusal to charge the jury on the lesser included offense of simple possession on the distribution count denied Canova's right to a fair trial, and that Canova was prejudiced by the admission at trial of guns and drugs as evidence against him.[2]

## DOUBLE JEOPARDY

The basis of defendant's double jeopardy claim is that the conspiracy charged in 85 Cr. 1000 (SWK) was part of the same conspiracy charged against Canova in another action, 85 Cr. 511 (CLB).

The indictment in 85 Cr. 511 (CLB) was filed on May 20, 1985, and charged Canova with one count of conspiring to distribute heroin and with six counts of distributing heroin. Count One alleged that Canova had conspired with Michael Forlivio to distribute heroin. Six overt acts were listed. They alleged Forlivio and Canova distributed varying amounts of heroin to undercover agents. Five of the sales allegedly occurred in Yonkers, and one in The Bronx. The alleged duration of the conspiracy was from December 31, 1984 through May 20, 1985.

On December 3, 1985, the indictment in the present case, 85 Cr. 1000 (SWK), was filed, charging Canova with one count of conspiracy and one count of distribution of heroin. Count One alleged that Canova conspired with Andrew Scudiero, Earl Gallo, Dominick Barca, Anthony Bordas, Charles Marino, Nardino Collatti, and others to distribute heroin. Eight overt acts were listed. These allegedly occurred in various locations, including Queens, Manhattan, Miami, and The Bronx. The acts include selling cocaine, accepting a cash deposit for heroin, discussing the sale of cocaine, and proceeding to the sites of planned drug transactions. Canova was named in one overt act which alleged that he proceeded to a McDonald's Restaurant in The Bronx in order to complete a heroin deal.

On January 3, 1986, Canova pleaded guilty to Count Three of 85 Cr. 511 (CLB),

---

1. Apparently, Canova's name is actually spelled Guglielmo Cannavo. Both parties refer to him by this name in their briefs. However, the indictment in this case refers to the defendant as Guillermo Canova, and this Court will use the spelling in the indictment.

2. After the jury rendered its verdict, counsel for Canova requested time to brief these issues. Trial counsel for Barca requested time to move to set aside the verdict on the grounds of insufficient evidence. The Court granted each counsel 30 days to file motions. After the trial, Barca retained new counsel, and no brief has been forthcoming.

which charged Canova with distributing 122.58 grams of heroin. In return for the guilty plea to Count Three, the United States agreed to drop all other Counts in 85 Cr. 511 (CLB) at the sentencing. *See* Affidavit of Deborah J. Stavile, Esq., Sworn to June 4, 1986 and Exh. 1 at 2, 9–10. Canova was sentenced in 85 Cr. 511 (CLB) on May 28, 1986. At the sentencing, the United States did not oppose dismissal of the open counts, including the conspiracy count.

Canova first raised the double jeopardy claim in a pretrial motion to dismiss the conspiracy count in 85 Cr. 1000 (SWK). After considering briefs and factual affidavits submitted by both parties, this Court denied that motion orally on March 31, 1986, ruling that the conspiracies were different. After the ruling, defense counsel demanded an evidentiary hearing on the claim. The Assistant United States Attorney handling the case suggested that since the evidence to be adduced at the hearing would be identical to the trial testimony, the trial should proceed. If the testimony indicated the conspiracies were the same, she said the Government would not oppose defendant's motion for dismissal of Count One. The Court accepted this suggestion and the trial proceeded. Defense counsel raised the double jeopardy claim after Canova was convicted, and the Government opposed it.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution states, "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb ...". The Clause "protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984).

Implicit in the Clause's protection is that an accused must suffer jeopardy once before he can suffer double jeopardy. *Serfass v. United States,* 420 U.S. 377, 393, 95 S.Ct. 1055, 1065, 43 L.Ed.2d 265 (1975). In *Serfass,* the Supreme Court defined the stage in criminal proceedings at which jeopardy attaches to an accused. In a jury trial, jeopardy attaches when a jury is empaneled and sworn; in a non-jury trial, jeopardy attaches when the court begins to hear evidence. *Id.* at 388, 95 S.Ct. at 1062.

In the instant case, jeopardy did not attach to the conspiracy count in 85 Cr. 511 (CLB). Since the jury in that case had not yet been sworn, Canova was never placed at risk of a determination of guilt, *id.* at 391, 95 S.Ct. at 1064, and hence was not placed in jeopardy. Thus, Canova's double jeopardy claim fails.

Although Canova does not argue that the United States breached its plea agreement in 85 Cr. 511 (CLB) by prosecuting him for conspiracy in 85 Cr. 1000 (SWK), such an argument can offer broader protection to a defendant than a double jeopardy claim, and the Court will address it. *But see United States v. Vaughan,* 715 F.2d 1373 (9th Cir.1983) (In a similar case, the court stated that breach of the plea agreement is a more viable theory for relief than double jeopardy, but did not consider the argument because Vaughan did not raise it.).

The Supreme Court has ruled that when a guilty plea rests in any significant degree on a promise by the prosecutor, so that the promise can be said to be part of the inducement to plea, the promise must be fulfilled. *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). A prosecutor is not bound to follow the terms of a plea offer. Only when a defendant pleads guilty as part of a plea agreement is the prosecutor bound. *Mabry v. Johnson,* 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984); *United States v. Carbone,* 739 F.2d 45, 46 (2d Cir.1984). In determining whether a plea agreement has been breached, a court is to look to what the parties to the plea agreement reasonably understood to be the term of the agreement. *Carbone,* 739 F.2d at 46; *Paradiso v. United States,* 689 F.2d 28, 31 (2d Cir.1982). The remedy for a broken promise is either specific performance or vacation of the guilty plea, depending on

what justice requires. *Santobello,* 404 U.S. at 263, 92 S.Ct. at 499; *United States v. Abbamonte,* 759 F.2d 1065, 1072 (2d Cir.1985); *Palermo v. Warden,* 545 F.2d 286, 296–297 (2d Cir.1976).

■ The plea allocution in 85 Cr. 511 (CLB) is clear that the parties contemplated that the terms of the plea agreement were that in return for Canova's plea of guilty to Count Three, only the remaining counts before Judge Brieant would be dismissed. The plea agreement in 85 Cr. 511 (CLB) had no bearing on 85 Cr. 1000 (SWK). *See* Stavile Aff. and Exh. 1. At the Rule 11 hearing, Canova's counsel stated that defendant had decided to resolve the allegation "contained in the particular indictment" before Judge Brieant. (Exh. 1 at 8) The Assistant United States Attorney handling 85 Cr. 511 (CLB) stated the indictment pending before Judge Kram, 85 Cr. 1000, was unrelated to 85 Cr. 511 (CLB). (Exh. 1 at 13) Canova's counsel did not object to this characterization of 85 Cr. 1000 (SWK). In fact, he stated that the drug transaction Canova was charged with in 85 Cr. 1000 (SWK), which formed the predicate for Canova's participation in the conspiracy in 85 Cr. 1000 (SWK), was "a wholly different situation according to the Government." (Exh. 1 at 14) He also said Canova "is steadfast in his innocence with regard to that alleged one cocaine transaction...." (Exh. 1 at 15) Finally, Judge Brieant stated, "I think I ought to make it clear to you that your plea here, Mr. Cannavo, has nothing to do with that case [85 Cr. 1000 (SWK)] one way or another." (Exh. 1 at 15)

In summary, neither double jeopardy nor Canova's guilty plea agreement prohibited the United States from prosecuting Canova for conspiracy in 85 Cr. 1000 (SWK).

## LESSER INCLUDED OFFENSE

Canova was charged in Count Seven of 85 Cr. 1000 (SWK) with distribution of and possession with intent to distribute heroin on May 8, 1985, in violation of 21 U.S.C. § 841(b)(1)(B). Canova claims that the Court should have charged the jury as to the lesser included offense of simple possession. 21 U.S.C. § 844.

Canova's counsel first raised the issue of the lesser included offense at a conference prior to charging the jury and after the charge was delivered. The Court refused to give the lesser included offense charge.

■ In a criminal case where some of the elements of the crime charged themselves constitute a lesser crime, the defendant, if the evidence justifies it, is entitled to an instruction which would permit a finding of guilt on the lesser offense. *Sansone v. United States,* 380 U.S. 343, 349, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965). A lesser offense charge is not proper when, based on the evidence, the factual issues are the same as to both the lesser and greater offenses. *Id.* at 349–350, 85 S.Ct. at 1009–10. A lesser included offense charge is proper only when the greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser included offense. *Id.* at 350, 85 S.Ct. at 1009–10.

The Second Circuit has articulated three criteria for determining when a defendant is entitled to a lesser included offense charge: all of the elements of the lesser offense must be elements of the greater offense, the lesser offense must be composed of fewer than all of the elements comprising the offense charged, and the greater offense must require the jury to find a disputed factual element which is not required for conviction of the lesser offense. *United States v. Giampino,* 680 F.2d 898, 901 (2d Cir.1982). As to the third criterion, a defendant must do more than simply formally contest the additional element. *United States v. Busic,* 592 F.2d 13, 24 (2d Cir.1978). Rather, he must produce sufficient evidence so that there would be a rational basis for a jury's convicting on the lesser offense but not the greater. *Id., United States v. Tsanas,* 572 F.2d 340, 345 (2d Cir.), *cert. den.,* 435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978).

■ There is no dispute that possession is a lesser included offense of distribution,

see *United States v. Nelson,* 563 F.2d 928, 931 (8th Cir.1977); *United States v. Beverly,* 562 F.2d 201 (2d Cir.1977); *cert. den.,* 434 U.S. 1039, 98 S.Ct. 779, 54 L.Ed.2d 789 (1978), and of possession with intent to distribute. *United States v. Garcia-Duarte,* 718 F.2d 42, 47 (2d Cir.1983). The element that distinguishes both these greater offenses from simple possession is intent to distribute. *Garcia-Duarte,* 718 F.2d at 47; *Beverly,* 562 F.2d at 204. The issue is thus whether the evidence was such that a rational jury could find that Canova did not intend to distribute heroin.

Turning first to Canova's defense in the case, he claimed that he was not the person Drug Enforcement Administration (DEA) agents observed delivering heroin to Charles Marino on May 8, 1985. In his defense, a number of witnesses testified that Canova was with them at work on May 8, 1985, the day of the heroin sale. Canova requested and received an alibi witness charge. Canova also presented evidence that the $35,000 in cash found in his home on May 11, 1985, including $8,200 of pre-recorded buy money from the May 8th sale, was not drug proceeds, but was rather money that his sister had earned while working overtime in order to pay for her impending wedding. In short, Canova did not contest that there was a drug sale on May 8, 1985. He did not contest the element that distinguishes possession and distribution—intent. Rather, he claimed he was not the person who made the sale.

In general, when a defendant presents an exculpatory defense—one which, if believed, would inevitably lead to acquittal on both the lesser and greater offenses—the defendant is not entitled to a lesser included offense charge. *United States v. Thornton,* 746 F.2d 39, 47 (D.C.Cir.1984); *United States v. Beverly,* 562 F.2d 201, 204 (2d Cir.1977), *cert. den.,* 434 U.S. 1039, 98 S.Ct. 779, 54 L.Ed.2d 789 (1978). Based on Canova's defense alone, since it was exculpatory, and since he did not challenge that some person intended to distribute, he was not entitled to the lesser included offense charge of possession.

However, even when a defendant presents an exculpatory defense, he may be entitled to a lesser included offense charge if the evidence presented by the prosecutor provided a rational basis for the jury's finding the defendant guilty of the lesser included offense. *Thornton,* 746 F.2d at 48. The prosecution in this case presented evidence that on May 8, 1985, Canova delivered one ounce (approximately 28 grams) of heroin to Charles Marino at Marino's home. Canova then followed Marino in a separate car to a McDonald's restaurant where Canova watched Marino consummate the sale to DEA agents. A lab test showed that the heroin was 84 percent pure. After the sale Canova met with Marino a few blocks away. Approximately $8,200 in pre-recorded buy money, the bulk of the money from the sale, was found in Canova's home a few days later.

The evidence also showed that Canova had access to and used the office of Calabro Construction Company, (Calabro) a family owned business, as a base for his heroin business. Michael Forlivio, Canova's alleged co-conspirator in 85 Cr. 511 (CLB), testified that the heroin in the Marino sale came from Calabro. A search of Calabro turned up heroin packaged in glassine envelopes, heroin stored in bulk, (Forlivio indicated that Canova stored at least an eighth of a kilogram of heroin at Calabro) dilutents, (lactose and mannite) and drug paraphernalia, including a scale, two strainers, a screen, a hot box and thermometer for testing the purity of heroin, and a measuring spoon. The heroin was stored in several different places, and varied from 2.3 to 75.7 percent pure. The United States also presented evidence that wholesale heroin is generally from 80 to 100 percent pure, and street level heroin is generally 5 percent pure.

Based on the evidence, a rational jury could not have found that Canova possessed but did not intend to distribute heroin. The Government presented evidence that Canova delivered heroin to Marino on May 8th, 1985, followed Marino to the sale, and conferred with Marino afterwards.

The pre-recorded buy money found in Canova's home was used at the May 8th drug transaction. Drug paraphernalia, street level and wholesale level purity heroin, and a large quantity of heroin were found in Calabro. The Evidence directly linked the heroin at Calabro to the May 8th drug sale. Based on this, a finding that Canova possessed but did not intend to distribute heroin would have been irrational.

In making this decision, the Court is aware of other cases which hold that evidence that a defendant possessed drugs, drug paraphernalia, and large amounts of cash do not preclude a rational jury from deciding that defendant possessed, but did not intend to distribute drugs. *See, e.g., United States v. Garcia-Duarte*, 718 F.2d 42, 47 (2d Cir.1983) (.23 grams of cocaine, 24.5 percent pure); *United States v. Levy*, 703 F.2d 791, 792–793 (4th Cir.1983) (4.75 ounces of 95 percent pure cocaine worth from $14,000 to $16,000, drug paraphernalia suitable for chemical conversion and personal use); *United States v. Burns*, 624 F.2d 95, 104 (10th Cir.), *cert. den.*, 449 U.S. 954, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980) (100 percent pure cocaine, $13,430 in cash, and a scale). *But see e.g., United States v. Johnson*, 734 F.2d 503, 504–506 (10th Cir. 1984) (possession of 26.63 grams of 83 percent pure cocaine worth approximately $13,315, and drug paraphernalia including a sifter, cocaine analysis kit, and dilutents make it irrational for a jury not to find defendant intended to distribute). This case, however, differs from *Garcia-Duarte, Levy*, and *Burns*. In those cases, there was no direct evidence of an actual distribution. In this case, however, the Government presented direct evidence of an actual distribution, and linked the heroin found at Calabro with the sale. Here, there was evidence that Canova delivered 84 percent pure heroin from Calabro to Charles Marino for sale to DEA agents. The bulk of the pre-recorded buy money from the sale was in Canova's home. Such evidence would preclude a rational jury from finding Canova guilty of possession but not intent to distribute.

## IRRELEVANT AND PREJUDICIAL EVIDENCE

■ Canova's final claim is that the Court's admission of weapons and drugs seized from Canova's residence and drugs seized from Calabro was unduly prejudicial and showed that Canova had a propensity to sell drugs.

At the time this evidence was introduced, the Court determined that all of this evidence was relevant. The evidence seized from Calabro was probative of the narcotics conspiracy and the sale of heroin by Marino. The evidence seized from Canova's residence was probative of Canova's membership in the narcotics conspiracy.

The Court also weighed the probative value of this evidence against its prejudicial value and found that its probative value substantially outweighed any prejudice. Fed. R. Evid. 403. The Court also considered whether this evidence demonstrated Canova's propensity to sell drugs. Fed. R. Evid. 404. The Court found that the evidence was admissible to prove that Canova was involved in a narcotics conspiracy and sold one ounce of heroin.

Canova's motion is thus DENIED.

SO ORDERED.