UNITED STATES of America, Appellee,

v.

Gonzalo ZAPATA–TAMALLO, Reymundo Quilez, Victor Morales–Doran, Estela Calle, Maria Betancourt, Defendants.

Appeal of Gonzalo ZAPATA–TAMALLO, Victor Morales–Doran, Estela Calle, and Maria Betancourt, Defendants–Appellants.

Nos. 399, 400, 281 and 282, Dockets 87–1268, 87–1269, 87–1272 and 87–1273.

United States Court of Appeals, Second Circuit.

Argued Nov. 4, 1987.

Decided Nov. 9, 1987.

Valerie Caproni, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., John J. Gallagher, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Joel Kaplan, Miami, Fla., for defendants-appellants Gonzalo Zapata–Tamallo and Victor Morales–Doran.

Calvin Garber, New York City, for defendant-appellant Estela Calle.

Robert Blossner, New York City, for defendant-appellant Maria Betancourt.

Before KAUFMAN, PIERCE, and MINER, Circuit Judges.

PER CURIAM:

This case arises out of a series of events that took place on August 25, 1986, in Queens, New York. Detective Michael Connors of the New York City Police Department, accompanied by Special Agent Henry Santiago of the federal Drug Enforcement Administration ("DEA"), while on a routine daytime surveillance observed three individuals, appellants Gonzalo Zapata–Tamallo ("Zapata"), Victor Morales–Doran ("Morales"), and Estela Calle ("Calle") at a public telephone. After Zapata had finished making his call, and along with his two companions had begun to walk away from the pay phone, Connors, still observing the trio, heard the sound of a beeper coming from the direction of appellants. Shortly thereafter, Connors noticed Zapata and his two companions heading back toward the phone. Connors drove around the block, stopped his car, and began watching the trio through binoculars. He saw Zapata holding a black object, which appeared to be a beeper, as he placed a call from the phone. After finishing the call, the trio began walking toward Queens Boulevard.

Connors subsequently located the pair near the corner of Greenpoint Avenue and 48th Street. At that point, Calle entered a store near the intersection; Morales remained outside, standing near a parking lot; and Zapata began walking up and down the street in front of a row of stores. Ten minutes later, Zapata met with an unidentified person, who handed over a blue bag. Zapata then walked over to Morales and gave him a "high five." Subsequently, Calle emerged from the store, and the three crossed the street to enter a building. Connors and Santiago then initiated a surveillance of the entrance to the building.

A short time later, Zapata walked out of the building, encountered one Reymundo Quilez, and both returned to the apartment. Connors and Santiago followed Zapata and Quilez inside by pulling the door out of Zapata's hand as he was closing it. After a brief conversation with Zapata, Quilez, and one Carmen Ochoa, the two officers, Zapata, and Ochoa went upstairs to Apartment 5–E.

Although there was disputed testimony as to the following events, it appears that the officers entered the apartment and identified themselves to Maria Betancourt. She informed them that the apartment was hers, but that Zapata and the others were guests. As they entered, the officers noticed Morales lying on the couch, and Calle sitting on the arm of the couch. Next to the couch was a clear plastic bag filled with a white powder subsequently identified as 25.13 grams of cocaine. Additionally, Connors noticed on the dining room table two one-dollar bills containing a white powder subsequently identified as less than one gram of cocaine.

Betancourt accompanied the officers into the kitchen where she signed a consent form authorizing the agents to search the apartment. Connors searched the bedroom

while the suspects were detained in the living room. Under the bed, Connors found a blue duffle bag, which he later identified as the same one he had earlier seen in Zapata's possession; it was found to contain seven kilograms of cocaine. Before the search was completed, Connors had located a beeper belonging to Calle, and a two-gram scale; neither item, however, bore the fingerprints of Zapata or Morales.

Zapata, Morales, Calle, and Betancourt were all subsequently indicted for conspiracy to possess narcotics with intent to distribute, in violation of 21 U.S.C. § 846, and for a substantive count of possession with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Following a jury trial in the United States District Court for the Eastern District of New York, the defendants were convicted of all charges.

The appellants now contest their convictions, *inter alia*, on the following grounds: (1) Betancourt contends that the court erred by denying her motion to suppress the fruits of the search, because her consent to the search was not knowing and voluntary; (2) Zapata contends that the district court erred by denying his motion to suppress the fruits of the duffle bag search; (3) Morales and Calle contest the sufficiency of the evidence supporting their convictions; and (4) Morales argues that the district court erred by not instructing the jury that it could have found him guilty of the lesser included offense of simple possession.

Finding no merit in any of these contentions, we now affirm.

### Betancourt's Motion to Suppress

█ Betancourt argues that the district court erred by denying her motion to suppress the fruits of a search of her apartment, because her consent to the search was not knowing and voluntary. The record indicates, however, that Agent Santiago testified at the suppression hearing that: he had asked Betancourt if he could search the apartment; he gave her a Spanish-language consent form; he explained her rights to her in Spanish; she appeared to read the form; she signed the form; and at no time were guns drawn or voices raised. Although Betancourt's testimony at the hearing differs substantially from that of the agent, the trial court was free to decide that the agent's testimony was more credible, and this court will not overturn a district court's finding that a defendant voluntarily consented to a search, unless the finding was clearly erroneous. *United States v. Puglisi*, 790 F.2d 240, 244 (2d Cir.1986). In light of this standard, we see no reason to disturb the trial court's determination that Betancourt's consent was voluntary.

### Zapata's Motion to Suppress

█ Zapata contends that the district court erred by denying his motion to suppress seven and one-half kilograms of cocaine found in a blue nylon bag uncovered during the search of Betancourt's apartment. To prevail on a suppression motion, the defendant must prove not only that the search was illegal, but also that he had a legitimate expectation of privacy in the item seized. *Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed. 2d 633 (1980); *United States v. Salvucci*, 448 U.S. 83, 85, 100 S.Ct. 2547, 2549, 65 L.Ed.2d 619 (1980). In the present case, Zapata has offered no proof that he had a legitimate expectation of privacy in the bag. Although the arresting officers saw some unidentified person deliver the bag to Zapata, there was no evidence that Zapata had an exclusive possessory interest in the bag. Moreover, Zapata has not proven that the search was illegal. Although a third party's consent to a search is generally invalid when it is "obvious" that the searched item belongs to a guest, *United States v. Isom*, 588 F.2d 858, 861 (2d Cir. 1977), Zapata has failed to prove that the bag was "obviously" his. We therefore hold that the district court did not err in denying Zapata's motion to suppress.

### Calle and Morales: Sufficiency of the Evidence

Calle and Morales each challenge the sufficiency of the evidence in support of his or

her conviction on the conspiracy and substantive charges. This court must affirm a conviction that is challenged on insufficiency grounds, however, if " 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Resto*, 824 F.2d 210, 212 (2d Cir.1987). In challenging the sufficiency of the evidence, the appellant bears a heavy burden. *United States v. Lanza*, 790 F.2d 1015, 1019 (2d Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 211, 93 L.Ed.2d 141 (1986).

In light of the foregoing standard, we believe that the evidence was sufficient to convict Calle and Morales of both the conspiracy and substantive counts. At trial, the government introduced evidence indicating that: (1) Calle, Morales, and Zapata had arrived from Florida the night before their arrest, but no luggage was found at the apartment at which they were staying; (2) Calle and Morales waited on a street corner in Queens while Zapata placed a call from a pay telephone; (3) Calle and Morales waited until Zapata received delivery of the blue bag from some unidentified person, after which Morales gave Zapata a "high five," and the trio proceeded immediately to Betancourt's apartment; (4) Calle possessed a beeper, a device commonly used to facilitate narcotics transactions; (5) Calle was subsequently discovered sitting with Morales on a couch in the apartment; and (6) a search of the apartment uncovered (a) a clear plastic bag containing 25.13 grams of cocaine; (b) two one-dollar bills containing less than one gram of cocaine; (c) a blue bag containing seven and one-half kilograms of 90% pure cocaine; (d) a scale capable of weighing up to two grams; and (e) narcotics records. Viewing this evidence in the light most favorable to the government, a rational jury could have concluded, beyond a rea-

sonable doubt, that both Calle and Morales were knowing members of a conspiracy to possess cocaine with intent to distribute, and that they aided and abetted Zapata in the possession of cocaine with intent to distribute.

*Morales: Lesser Included Offense*

Finally, Morales contends that the district court erred by failing to instruct the jury that it could convict him of the lesser included offense of simple possession, as requested. Due process requires that a lesser included offense instruction be given " 'if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser offense and acquit him of the greater.' " *Hopper v. Evans*, 456 U.S. 605, 612, 102 S.Ct. 2049, 2053, 72 L.Ed.2d 367 (1982). In the present case, however, a rational jury could not have found Morales guilty of simple possession while at the same time acquitting him of possession with intent to distribute. Given that the blue bag was found to contain seven and one-half kilograms of cocaine, an amount far in excess of what Morales would have required merely for personal use, it would have been implausible for the jury to convict Morales of simple possession of this quantity while acquitting him of possession with intent to distribute. *Cf. United States v. Garcia–Duarte*, 718 F.2d 42, 47 (2d Cir.1983) (stating that, in drug conspiracy case, where search uncovered only .23 grams of 24.5% pure cocaine, the jury could rationally have inferred that the defendant possessed cocaine with no intent to distribute it). Moreover, while two smaller quantities of cocaine were also located in the apartment, there was *no* evidence that Morales had sufficient control over these quantities to support a conviction for possession.[1] Finally, we note that Morales relied at trial on an exculpatory defense that would have led to an acquittal on both the greater and lesser charges if the jury

---

1. We note that the indictment charges only that the defendants conspired to possess, and did possess with intent to distribute, "a substantial quantity" of cocaine, and does not refer in detail to the specific quantities of cocaine actually found in the apartment. Given the evidence in this case, we believe that the "substantial quanti-

ty" which the defendants possessed with intent to distribute was the quantity found in the blue bag, but not the other two smaller quantities. There was simply no evidence that the defendants exercised control over these smaller amounts.

had believed it. When a defendant relies on such a defense, however, he is not entitled to a lesser charge instruction. *United States v. Canova*, 638 F.Supp. 1055, 1059 (S.D.N.Y.1986). *See also United States v. Thornton*, 746 F.2d 39, 47 (D.C.Cir.1984); *United States v. Beverly*, 562 F.2d 201, 204 (2d Cir.1977), *cert. denied*, 434 U.S. 1039, 98 S.Ct. 779, 54 L.Ed.2d 789 (1978).

For the foregoing reasons, the judgments of conviction are affirmed.