**UNITED STATES of America, Plaintiff,**

v.

**Albert LASKOW and George Rullman, Defendants.**

**No. CR 87–00195.**

United States District Court, E.D. New York.

July 20, 1988.

Andrew J. Maloney, U.S. Atty. by Peter J. Tomao, Asst. U.S. Atty., Brooklyn, N.Y., for plaintiff.

Harvey Kaminsky, Hartsdale, N.Y., for defendant Laskow.

Greene & Zinner by Stanley S. Zinner, White Plains, N.Y., for defendant Rullman.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Defendants Albert Laskow and George Rullman were charged in a twenty-six count indictment with conspiracy and other crimes in connection with an alleged scheme to rig test equipment and falsify documents in the production and certification of electronic components for radar jamming devices installed in United States aircrafts. According to the indictment, between 1979 and 1984, Laskow and Rullman operated a company called Feustal Industries Corporation ("Feustal"). Feustal entered into a contract with Raytheon Company under which Feustal was to manufacture an electronic device known as a Yitturian Timed Oscillator ("YTO"), an essential component of a radar jamming unit that Raytheon produces. The contract provided that Feustal would produce the YTO's in accordance with specifications set by Raytheon and would subject the YTO's to elaborate testing.

The first two counts of the indictment charge defendants with conspiracy to defraud the United States. The first count alleges that defendants conspired to produce YTO's that did not conform to Raytheon's specifications, to ship the nonconforming YTO's, to provide Raytheon certificates of compliance signed by either Rullman or Laskow indicating that the YTO's conformed to Raytheon's specifications, and to modify equipment to falsify test results. The second count charges the defendants with conspiracy to defraud the United States by causing the government to pay for the installation of radar jamming devices that contain YTO's produced by Feustal. Defendants now move to dismiss counts one and two of the indictment on the ground that prosecution under these two counts is barred by a plea agreement defendants entered into with the United States Attorney for the Central District of California.

During their association with Feustal, Rullman and Laskow were subjects of an FBI investigation into allegations that defendants were overcharging Raytheon for the YTO's. Subsequently, defendants entered into a plea agreement with the United States Attorney for the Central District of California ("Central District"). The agreement provides in pertinent part as follows:

[T]his office is prepared to seek an indictment against your client charging violations of 18 U.S.C. § 371 (conspiracy), 18

U.S.C. § 1341 (mail fraud), 18 U.S.C. § 1343 (wire fraud), and 41 U.S.C. § 51 (payment of kickbacks on government contracts) occurring from late 1981 through 1983.

In the interest of justice, this office has made the following pre-indictment plea offer, to which you have conveyed your client's acceptance:

1. Your client will waive indictment and will plead guilty to a one count information charging your client with wire fraud.

2. The government agrees that the maximum period of incarceration it would seek from the court is a two year period.

3. The government agrees that it will not bring additional charges alleging mail fraud, wire fraud, conspiracy or payment of kickbacks based upon his association with Feustal Industries Corporation against your client.

Defendants contend that this agreement precludes the United States Attorney for the Eastern District of New York ("Eastern District") from prosecuting them on charges of conspiracy arising out of their criminal activity in connection with Feustal.[1] For the reasons set forth below, defendants' motion to dismiss counts one and two of the present indictment is denied.

It is well settled that the prosecution is bound to fulfill any promise which it makes in exchange for a defendant's guilty plea. *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); *United States v. Canova*, 638 F.Supp. 1055 (S.D.N.Y.1976). Resolution of the present motion turns on whether the term "government", as used in the agreement, was intended to encompass the Eastern District and whether the term "conspiracy" extends to defendants' conspiratorial activities which are charged in the New York indictment.

### I.

This Court must first determine whether the United States Attorney for the Eastern District of New York is bound by the Central District of California's promise that defendants would not face further prosecution. The Second Circuit in *United States v. Annabi*, 771 F.2d 670, 672 (2d Cir.1985), held that "A plea agreement binds only the office of the United States Attorney for the district in which the plea is entered unless it affirmatively appears that the agreement contemplates a broader restriction." Therefore, the Eastern District, which was not a party to the plea agreement, is not bound by the agreement unless defendants can establish through affirmative proof that the parties intended the agreement to preclude the Eastern District from prosecuting defendants on related charges.

Defendants first argue that such intent is clear from the face of the agreement which provides that "the government agrees that it will not bring additional charges alleging mail fraud, wire fraud, conspiracy or payment of kickbacks based upon his association with Feustal Industries Corporation against your client." Defendants claim that the use of the term "government" to identify the contracting party evinces the Central District's intent to bind the Eastern District as well. This Court is unpersuaded by defendants' contention. Prosecutors, courts and defense attorneys alike use the term "government" to refer to a particular office of the United States Attorney as well as to indicate the United States Government as a whole. Thus, the mere fact that the Central District used the word "government" in the plea agreement does not create an affirmative appearance that the agreement contemplated barring districts other than the Central District from pursuing prosecution of these defendants.

Defendants contend that the circumstances surrounding the plea agreement also support a broad reading of the restriction on prosecution. The Second Circuit, in dicta, noted that "a promise to bind other districts can be inferred from the negotiations between defendant and prosecutor as well as from statements at the plea colloquy." *United States v. Russo*, 801 F.2d 624, 626 (2d Cir.1986) (citations omitted).

---

1. Defendants do not move to dismiss any counts of the indictment on double jeopardy grounds, but argue only that the plea agreement creates a bar against prosecution.

In the present case, however, nothing that occurred during the Central District plea allocution indicates that the agreement was intended to bind offices of the United States Attorney other than the Central District office. The Central District judge who presided over the plea proceeding merely read the agreement into the record. The scope of the agreement and its effect on prosecution outside the jurisdiction were not discussed. Similarly, defendants have not brought to the Court's attention, nor can the Court gather from its own review of the record, any support for defendants' contention in the plea negotiations.

■ With no affirmative evidence from either the language of the agreement, the plea colloquy, or plea negotiations, defendants attempt to substantiate their claim that a broad reading of the agreement is warranted by relying primarily on the lack of any express statement during the plea allocution, the preliminary negotiations, or in the agreement itself restricting the agreement's prohibition on prosecution to the Central District. Defendants argument, in effect, is that unless there is an explicit statement to the contrary, it is presumed that a non-prosecution agreement binds offices of the United States Attorney that are not parties to the agreement. This position is at odds with the law in this Circuit, which presumes a narrow reading of the boundaries of a plea agreement unless a defendant can affirmatively establish that a more expansive interpretation was contemplated. *Annabi*, 771 F.2d at 672.

■ One circumstance defendants do point to is the fact that they both reside within the Eastern District and that Feustal Industries has its principal place of business here. Defendants contend that since they maintain a strong bond with the Eastern District, it is reasonable to infer that the plea agreement in the Central District contemplated binding the Eastern District as well. The Court finds this argument to be unpersuasive.

Moreover, the government maintains, and defendants concede, that the Central District had no knowledge of the investigation that was taking place in the Eastern

District at the time the Central District plea was being negotiated. Both districts conducted independent investigations of defendants without any collaboration with the other district or any indication that defendants were facing charges elsewhere. The Central District, unaware of defendants' potential criminal liability in the Eastern District, could not have intended to insulate defendants from prosecution which they had no reason to foresee.

At oral argument, defendants noted that although the Central District may have been unaware of the potential criminal liability defendants faced in the Eastern District, defendants themselves were cognizant of the full extent of their criminal activity and under a contract theory are entitled to the entire benefit of their bargain. Defendants are correct in their assertion that some courts have applied principles of contract law to disputes involving plea agreements. *See, Cooper v. United States*, 594 F.2d 12 (4th Cir.1979); *United States v. CFW Construction Co.*, 583 F.Supp. 197 (D.C.S.C.1984), *aff'd*, 749 F.2d 33 (1984). The application of contract law does not, however, buttress defendants' position.

In order to create a valid contract, the parties must come to a "meeting of the minds." Restatement (Second) of Contracts § 17 comment c (1981). If defendants believed that the government was profferring a substantially greater degree of consideration than the government in fact intended, then no meeting of the minds occurred. Without such a meeting of the minds, there can be no contract. In addition, the doctrine of "mistake" in contract law, as adopted from the famous *"Pearless case"*, *Raffles v. Wichelhaus*, 159 Eng.Rep. 375 (Ex.1864), provides that where one party reasonably defines the consideration for the contract in a manner inconsistent with the other party's also reasonable definition, a mutual mistake exists and the contract is void. *Flower City Painting, ETC v. Gumina Const. Co.*, 591 F.2d 162, 165–66 (2d Cir.1979); *Oswald v. Allen*, 417 F.2d 43, 45 (2d Cir.1969). Certainly, the Central District's use of the term "government" to

refer to the specific entity prosecuting that particular case is at least as reasonable as defendants' assumption that the word was being used in a broader context.

When faced with the task of assessing the binding effect of a plea agreement on a non-party district, the Second Circuit, in attempting to arrive at the most reasonable interpretation of arguably ambiguous language, similar to that presented in the case at bar, concluded as follows:

> While this [more limited agreement] gave the defendants less than complete protection, their attorneys were doubtless more interested in nailing down the substantial concessions they had already achieved than in having further inquiry made. From [the prosecutor's] point of view the limitation is certainly intelligible; he had good cause for not wanting to bind another Office which he had not consulted.

*United States v. Alessi,* 544 F.2d 1139, 1154 (2d Cir.), *cert. denied,* 429 U.S. 960, 97 S.Ct. 384, 50 L.Ed.2d 327 (1976). This Court finds that in the absence of an affirmative appearance to the contrary, the more reasonable interpretation of the agreement is that it contemplated binding only the Central District.

In addition, in determining whether a criminal prosecution is precluded by a plea agreement in a sister district, the Second Circuit has also attached great significance to the degree of independence with which that prosecution has developed. *See United States v. DiNapoli,* 817 F.2d 978, 979 (2d Cir.1987); *Alessi,* 544 F.2d at 1154, *cert. denied,* 429 U.S. 960, 97 S.Ct. 384, 50 L.Ed.2d 327 (1976); *United States v. Papa,* 533 F.2d 815, 825 (2d Cir.1976), *cert. denied,* 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 329 (1970). In these cases, the Second Circuit has consistently refused to restrict prosecution where the office pursuing the matter was not a party to the plea agreement and where the investigation leading to the prosecution then at issue was conducted independent of any information gathered in the earlier prosecution. Here, the Eastern District conducted its investigation entirely independent of any prosecutorial activity engaged in by the Central District. This is not a case where one district, unable to pursue a conviction against a defendant, passes along its work product to a sister district in order to circumvent a restriction on prosecution. Not only did the Eastern District initiate its own criminal investigation of defendants without any aid or encouragement from the Central District, but the focus of the Eastern District investigation, namely, the quality of the YTO's and defendants' falsification of test compliance certificates in connection with their sale, is entirely different from the basis of the Central District prosecution, which concerned defendants' overcharging Raytheon for YTO's at the government's expense.

## II.

■ Having found that the Eastern District is not bound by the plea agreement, it is unnecessary to interpret the particular terms of the agreement. The Court does note, however, that defendants, without specifically addressing this issue in their papers, assume a broader definition of the term "conspiracy" than is reasonable in the context in which it is used in this agreement. The plea agreement set forth the charges on which the Central District was prepared to seek an indictment against defendants. Among those charges enumerated was "violations of 18 U.S.C. § 371 (conspiracy)." (Defendant's Appendix to Motion to Dismiss, exhibit A at 1). In the agreement, the word "conspiracy" first appears in a parenthetical following a specific crime of conspiracy, *i.e.,* 18 U.S.C. § 371. Therefore, the agreement itself defines the term "conspiracy", and it is only reasonable to conclude that the use of this term to refer to charges which the prosecutor agrees not to bring against defendants in the future relates only to conspiracy to defraud the government under section 371 of Title 18 of the United States Code.

Count Two of the Eastern District indictment charges defendants with a violation of section 286 of Title 18 of the United States Code, which is not the same crime as that for which the Central District granted defendants immunity. Where the "new charges are sufficiently distinct" from

those contained in the plea agreement, it is not a violation of the plea agreement to pursue prosecution. *Annabi*, 771 F.2d at 672.

Although Count One of the present indictment does charge defendants with violations of section 371 of Title 18 of the United States Code, that charge is also sufficiently distinct from the conspiracy charge contained in the plea agreement so as not to be in conflict with it. Conspiracy is an inchoate crime that takes on concrete meaning only in reference to the underlying criminal activity. In the information filed in the Central District, the criminal activity underlying the conspiracy is defendants' directing of Feustal to overcharge Raytheon for the YTO's, causing Raytheon to pass on these overcharges to the government, and defendants' payments to an employee of Raytheon to prevent him from reporting the overcharges. Count One of the present indictment charges defendants with conspiracy to ship YTO's that do not conform to the required specifications and to falsify certificates of compliance. All of the factual allegations contained in the Eastern District indictment pertain to the nonconforming nature of the YTO's. There is no mention in the indictment of the possibility that defendants were overcharging Raytheon, and ultimately the government, for the YTO's. Similarly, the Central District's information was based solely on defendants' overcharging activities and contained no allegations that the YTO's were not made to the government's specifications. Therefore, the conspiracy charges in the present indictment are sufficiently distinct from the crimes at issue in the Central District prosecution, and thus are not covered by the terms of the plea agreement.

### III.

■ Furthermore, it is worthy of note that the Central District offered defendants an adequate remedy, which defendants declined to accept. Upon learning that the Eastern District would be pursuing criminal charges against defendants, the Central District afforded defendants the opportunity to withdraw their guilty pleas. Defendants contend that withdrawal of the pleas is an unsatisfactory alternative to specific performance as it does not allow defendants to reap the benefit of their bargain. However, the Supreme Court has "expressly declined to hold that the Constitution compels specific performance of a broken prosecutorial promise as the remedy for such a plea; the Court made it clear that permitting [the defendant] to replead was within the range of constitutionally appropriate remedies." *Mabry v. Johnson*, 467 U.S. 504, 510 n. 11, 104 S.Ct. 2543, 2548 n. 11, 81 L.Ed.2d 437 (1984) (citing *Santobello*, 404 U.S. at 262–63, 92 S.Ct. at 498–99); *see also U.S. v. Abbamonte*, 759 F.2d 1065 at 1071 (2d Cir. 1985). Whether specific performance is warranted is a discretionary matter depending upon the circumstances of each case. *Palermo v. Warden, Green Haven State Prison*, 545 F.2d 286, 297 (2d Cir. 1976), *cert. dismissed*, 431 U.S. 911, 97 S.Ct. 2166, 53 L.Ed.2d 221 (1977); *Canova*, 638 F.Supp. at 1058. In so much as this case involves a misunderstanding as to the extent of the consideration offered in exchange for the plea, the Central District's offer to allow defendants to withdraw their guilty pleas provided defendants adequate protection against being bound by an agreement that did not furnish sufficient incentive to induce defendants to plead guilty.

### IV.

For the reasons stated above, defendants' motion to dismiss counts one and two of the indictment is denied. An order denying a motion to dismiss an indictment for violation of an earlier plea agreement is final and thus appealable. *Abbamonte*, 759 F.2d at 1071. Since defendants have indicated to this Court that they will promptly appeal an adverse ruling on the motion, the Court, unless it is advised otherwise, will adjourn the September trial date and await a decision from the Second Circuit before proceeding with this case.

SO ORDERED.