UNITED STATES of America, Appellee,

v.

Jorge RIOS, Gabriel Rios and Fabio Tamayo, Defendants,

Jorge Rios and Fabio Tamayo, Defendants–Appellants.

Nos. 1159, 1160, Dockets 88–1007, 88–1008.

United States Court of Appeals, Second Circuit.

Argued May 16, 1988.

Decided Sept. 2, 1988.

Colleen P. Cassidy, of counsel, The Legal Aid Soc., Federal Defender Services Unit, New York City, for appellant Jorge Rios.

Lorin Duckerman, New York City, for appellant Tamayo.

Catherine E. Palmer, Asst. U.S. Atty., E.D.N.Y., Andrew J. Maloney, U.S. Atty., Brooklyn, N.Y., for appellee.

Before MESKILL and WINTER, Circuit Judges, and McCURN, District Judge.*

PER CURIAM:

A. *The Suppression Hearing*

Judge Sifton, after conducting a pretrial hearing, denied defendants' motions to suppress the warrantless seizure of physical evidence from inside an apartment and from the trunk of a parked vehicle. It is claimed that the factual findings upon which Judge Sifton based his denial were clearly erroneous. It is to the trial court's crediting of the government's factual account that the appellants assign error. That factual account follows.

In April of 1987, Detectives Thomas Healy and Michael Falciano of the New York City Police Department, involved in the investigation of a drug related homicide, found a business card among the victim's effects which bore the handwritten notation: "Jorge 8708 Apt 8C Justice." Recognizing this address as an apartment building on Justice Avenue in Queens, Healy and Falciano at approximately 4:00 p.m. on April 24, 1987 knocked and rang a buzzer at the apartment door. A voice from within asked who was there, and Detective Healy responded, "Jorge." Gabriel Rios opened the door and the detectives identified themselves as police officers. Permission to enter was granted by Gabriel Rios. Once in the apartment, the officers made the acquaintance of the other occupant present at the time, appellant Tamayo. The detectives once again identified themselves as police officers and requested permission to sit down and ask questions. After the occupants concurred, the group engaged in light conversation about soccer and Gabriel Rios' plans to join the Air Force. Throughout this conversation, the occupants were permitted to move freely about the apartment. Gabriel Rios went into the kitchen on two occasions to tend to food he was preparing.

After explaining that they were involved in an investigation of a drug related homicide, the officers inquired whether the occupants had any drugs or guns, and upon receipt of a negative response, were granted permission to search the apartment. As a result of that search, the detectives retrieved a suitcase containing eight Kilo-

---

* Honorable Neal P. McCurn, United States District Judge for the Northern District of New York, sitting by designation.

grams of cocaine, triple beam scales, a handgun, money counting machines and several ledgers purportedly detailing drug related transactions. The ledgers were in plain view of the officers prior to the search.

During the search detective Healy inspected the balcony of the apartment. While there he noticed a vehicle pull into parking space 13. Healy had determined that parking space 13 belonged to the occupants of apartment 8C. A few minutes later, the doorbell to the apartment rang. Detective Healy prepared to receive the entrant by standing by the door with his firearm held at his side. Appellant Jorge Rios, whom Healy recognized as the driver of the car in space 8C, entered, appeared startled, and dropped a bag he was carrying. The bag was not completely closed due the presence of car jumper cables. Because of this fortuitous circumstance, Healy was able to peer into the bag and observe what appeared to be cocaine. Jorge Rios was then arrested and his car searched. That search resulted in the seizure of 91 grams of cocaine.

Appellants assert that the officers' testimony was so implausible that Judge Sifton's findings must be set aside. They argue that the testimony that they consented to the search was incredible, and that contrary to Healy's testimony, they would have attempted to hide suspicious items, such as the ledgers and the cocaine in Jorge's bag, from the "plain view" of the officers. They also argue that the officers' testimony concerning their own behavior was irrational. Appellants contend that these seasoned officers, investigating a murder, would not have casually sat around the living room discussing sports and the Air Force, nor would they have permitted Gabriel Rios to venture into the kitchen unescorted, where he could have destroyed evidence or armed himself. Moreover, they maintain that the officers would not have approached Jorge Rios' entry into the apartment in the manner described. They argue that Healy would have had his gun pointed, and not at his side, because by that time the officers had found a gun in the kitchen and arrested Gabriel and Fabio. Appellants also quarrel with Healy's testimony regarding the car. They maintain that Healy's knowledge about parking spot 13 and his happenstance location on the balcony when Jorge pulled into that spot are too unlikely to believe.

Appellants complete their argument by pointing to a series of prosecutorial investigations engaged in by officers Healy and Falciano wherein lady luck seems to have been ever present at their side. Detectives are invited in, often to see cocaine or other contraband in plain view; consent is given to search; and bags carrying cocaine are either open so that the cocaine is visible or are dropped to spill narcotics. Appellants claim that this evidence shows that officers Healy and Falciano are engaged in a pattern of fabrication, and that Judge Sifton was clearly wrong in finding their testimony to be credible.

The trial court's findings will not be overturned absent a showing that they were clearly erroneous. *United States v. Zapata–Tamallo*, 833 F.2d 25, 27 (2d Cir. 1987). This is particularly true where, as here, the basis of the findings turns on the credibility of the witnesses. *Id.* In order to reverse, the appellate court must be left with a definite and firm conviction that a mistake has been committed. *Miles v. New York State Teamsters Conf.*, 698 F.2d 593, 600 n. 5 (2d Cir.1983). Nevertheless, the trial court's credibility determinations are not completely immune from appeal. *Anderson v. Bessemer City*, 470 U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). This is so because:

> factors other than demeanor and inflection go into the decision whether or not to believe a witness. Documents or objective evidence may contradict the witness' story; or the story itself may be so internally inconsistent or implausible on its face that a reasonable factfinder would not credit it. Where such factors are present, the court of appeals may well find clear error even in a finding purportedly based on a credibility determination.

*Id.*

Appellants arguments do · cast some doubt on the credibility of the officers'

testimony. Nevertheless, we are not left with a "definite and firm conviction that a mistake has been made." The record reveals that Judge Sifton was presented with and considered the question of the officers' credibility. He asked questions of the witnesses, required a prosecution rebuttal, and adjourned the hearing to allow the defendants to bring in evidence regarding other suspicious prosecutions. His oral opinion also addresses the credibility of the officers' testimony. Given Judge Sifton's careful attention to the credibility issue, this court will not set aside his findings.

## B. *Insufficiency of the Evidence*

■ It is established that a defendant advancing a claim of insufficiency of the evidence bears a very heavy burden. *United States v. Soto*, 716 F.2d 989, 991 (2d Cir.1983). As this court stated in *United States v. Carson*, 702 F.2d 351, 361 (2d Cir.1983):

> Our inquiry is whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560, 572 (1979); *United States v. Barnes*, 604 F.2d 121, 157 (2d Cir.1979), *cert. denied*, 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980). In making this determination, we must view the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704 (1942), and construe all permissible inferences in its favor, *United States v. Dazzo*, 672 F.2d 284, 288 (2d Cir.), *cert. denied*, 459 U.S. 836, 103 S.Ct. 81, 74 L.Ed.2d 77 (1982).

Against this heavy burden, appellant Tamayo asserts that the government failed to present sufficient evidence to support his conviction for conspiracy to possess cocaine with intent to distribute (count 1) and possession with intent to distribute (count 2). Tamayo claims that the evidence at best establishes his mere presence at the apartment.

### 1. *Possession with intent to distribute*

■ It is true that mere presence at the location of contraband does not establish possession. *See United States v. Johnson*, 513 F.2d 819, 823–24 (2d Cir. 1975). It is not necessary for a defendant to touch or exercise *exclusive* control over contraband to possess it, however. *See United States v. Tussa*, 816 F.2d 58, 63 (2d Cir.1987). What is required is sufficient indicia of dominion and control. *United States v. Gaviria*, 740 F.2d 174, 185 (2d Cir.1984). At the trial there was sufficient evidence presented that Tamayo lived in the apartment and was not a mere visitor. Moreover, there was evidence that Tamayo was in the same bedroom as the suitcase of cocaine and the scales when the police arrived. Considering this evidence in a light favorable to the government, there is sufficient indicia of dominion and control. Moreover, given the quantity of the cocaine present and the presence of scales, the jury could reasonably infer an intent to distribute. *Id.*

### 2. *Conspiracy to possess cocaine with intent to distribute*

■ Of course mere association with conspirators does not establish participation in a conspiracy. *United States v. Diez*, 736 F.2d 840, 843 (2d Cir.1984). "[T]here must be some evidence from which it can reasonably be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *Gaviria*, 740 F.2d at 183 (citing *United States v. Soto*, 716 F.2d 989, 991 (2d Cir.1983)). Despite Tamayo's arguments to the contrary, such evidence was presented in the trial below. There was considerable evidence presented to establish the existence of a cocaine distribution conspiracy. A significant quantity of cocaine as well as paraphernalia indicative of a distribution operation including triple beam scales, money counting machines, a gun, and records purportedly detailing drug transactions were discovered in the apartment. Moreover, evidence was presented from which a reasonable juror could infer that Tamayo was associated

with this conspiracy. As noted previously, there was evidence that Tamayo lived in the apartment and was not a mere visitor. More significantly, the name "Fabio" appeared several times in the records detailing drug transactions and expenses.

### C. *Evidentiary Error*

In the prosecutor's opening statement, and in trial testimony, reference was made to the fact that the officers were at the defendants' apartment on a drug related murder investigation. Appellants claim that it was error to permit this because (1) it was irrelevant and inadmissible pursuant to Federal Rule of Evidence 402, and (2) even if relevant, it was highly prejudicial in that it would imply to the jurors that appellants were somehow implicated in the murder, and therefore should have been excluded pursuant to Federal Rule of Evidence 403. We disagree.

Reference to the murder investigation was clearly relevant in that it explained to the jury why Detectives Healy and Falciano went to apartment 8C. Moreover, whatever possible prejudice might have arisen from the reference to the murder investigation was appropriately limited by Judge Sifton's instruction that "there is no suggestion whatsoever in this case, and there won't be any evidence suggesting, that these defendants were themselves responsible for any homicides. It's simply, as I understand, the background of what led to these men being questioned." Trans. at 36.

### CONCLUSION

We have considered all of appellants' arguments in support of this appeal and have found them to be without merit. The judgments of conviction are affirmed.