**UNITED STATES of America**

v.

**Robin F. WILLIAMS, Appellant.**

**No. 89–3111.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 31, 1991.

Decided Dec. 13, 1991.

As Amended Feb. 19, 1992.

Rehearing and Rehearing En Banc Denied March 16, 1992.

M. Isabel Medina (appointed by the Court) with whom Daniel A. Rezneck, Washington, D.C., was on the brief, for appellant.

Linda Otani McKinney, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before D.H. GINSBURG, SENTELLE and HENDERSON, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

Appellant Robin F. Williams was convicted of (1) possession with intent to distrib-ute a mixture containing cocaine base, (2) being a felon in possession of a firearm, and (3) use of a firearm in aid of drug trafficking. Williams maintains there was insufficient evidence to support the convictions for drug and gun possession.

## I. BACKGROUND

On October 8, 1988, police officers approached the front and back of Elizabeth Johnson's apartment in southeast Washington, D.C., banged on the front door, and demanded entry. After a brief delay, during which several items were thrown out of a rear window, the officers forcibly entered the apartment. Thereafter Johnson consented to a search of the premises. The officers found in the apartment and the back yard a slew of weapons, ammunition, PCP, more than 50 grams of cocaine base, and some beakers. They arrested all seven individuals in the apartment, including appellant Williams.

Williams was in the living room when the officers entered the apartment, but none of the weapons or drugs was found in that room. The Government presented the following evidence in order to establish Williams' participation in the drug operation in Johnson's apartment: (1) Williams' fingerprint was on a box of ammunition found in the back yard; (2) his name was on a money or bank card and an old telephone bill found in a bedroom; (3) Williams tried to jump out of a rear window during the raid; (4) he had jettisoned weapons from the apartment before the officers forcibly entered; and (5) articles of male clothing (albeit not identified as belonging to Williams) were found in the apartment.

The standard for reversing a conviction on the ground of insufficient evidence is high. "[T]he prosecution's evidence is to be viewed in the light most favorable to the government, drawing no distinction between direct and circumstantial evidence, and 'giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact.'" *United States v. Foster*, 783 F.2d 1087, 1088 (D.C.Cir.1986) (en banc) (citation omitted, quoting *United States v. Davis*, 562

F.2d 681, 683 (D.C.Cir.1977)). We reverse only if "a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime." *Austin v. United States*, 382 F.2d 129, 138 (D.C.Cir.1967). *See also United States v. Lewis*, 626 F.2d 940, 951 (D.C.Cir.1980) ("The Government must receive the benefit of all legitimate inferences to be drawn from the evidence, and need not negate every possible inference of innocence") (citation omitted).

## II. THE DRUG CHARGE

■ Viewed in this light, the evidence here supports a finding that Williams constructively possessed the drugs in Johnson's apartment with the intent to distribute them. Constructive possession is determined by whether the defendant had "dominion and control" over the contraband. *United States v. Byfield*, 928 F.2d 1163, 1166 (D.C.Cir.1991).

The law of this circuit is clear that "mere proximity or accessibility to contraband will not support a conclusion that an individual had knowing dominion and control over it." *Foster*, 783 F.2d at 1089. *See also United States v. Pardo*, 636 F.2d 535, 549 (D.C.Cir. 1980) ("In short, there must be something more than mere presence at the scene of a criminal transaction. There must be some action, some word, or some conduct that links the individual to the narcotics and indicates that he had some stake in them, some power over them."). In the present context, that is, Williams' mere presence is not by itself sufficient evidence to link him to the drug operation in the apartment.

An individual's "presence, proximity or association may establish a prima facie case of drug-possession," however, "when colored by evidence linking the accused to an ongoing criminal operation of which that possession is a part." *United States v. Dunn*, 846 F.2d 761, 763–64 (D.C.Cir.1988). This evidentiary link may take the form of the defendant's possession of firearms in proximity to an illegal drug operation. *Id.*

In this case, a police officer testified that Williams, whom he identified at trial, tried to leave the apartment through the rear window, and that two firearms (one of them loaded) were then tossed from that window together with four boxes of ammunition, a case for one of the pistols, and a bottle containing PCP. From this testimony the jury could permissibly conclude that Williams first unsuccessfully tried to escape, and then attempted to discard the evidence. *See United States v. Hernandez*, 780 F.2d 113, 117 (D.C.Cir.1986) ("[T]he fact that a defendant took evasive action in response to the presence of police can be considered in inferring constructive possession").

Williams' attempt to dispose of the evidence supports the inference that he "had the right to exercise 'dominion or control' over the drug[s]." *United States v. Lawson*, 682 F.2d 1012, 1017 (D.C.Cir.1982). *See Hernandez*, 780 F.2d at 117 ("[I]f proximity is coupled with a gesture toward the contraband, suggesting an ability to control the item in question, constructive possession might be inferred"). Additionally, the circumstance of Williams' fingerprint appearing on the ammunition box, viewed in the light most favorable to the Government, could be taken to corroborate his identity as the person who disposed of the evidence, and indeed as a person who possessed the firearms found with the ammunition.

Finally, there was evidence indicating that if Williams did not live in the apartment, neither was he a stranger there: An old phone bill addressed to him (at a different location) and a bank or money card in his name were also found, not in the living room where Williams was arrested, but in Johnson's bedroom. Taken together, and in light of the evidence of Williams's fingerprint on the ammunition box and his involvement in attempting to dispose of the arsenal weapons kept in the apartment, this evidence could support the jury's finding that Williams constructively possessed the drugs in the apartment. *Cf. United States v. Holland*, 445 F.2d 701, 703 (D.C.Cir.1971).

## III. THE FIREARM CHARGE

■ Williams also challenges the sufficiency of the evidence to support his conviction for use of a firearm in aid of drug

trafficking. The arsenal located in proximity to the drugs places this case squarely within the rule of *United States v. Anderson*, 881 F.2d 1128 (D.C.Cir.1989). There we held that once a defendant has been linked to premises used for drug distribution, "the proximity of the guns to the drugs and drug paraphernalia, the presence of loaded guns and ammunition, and expert testimony that guns are often found in 'crack houses' to protect drug traffickers and their investment" also supports a jury conviction for use of a firearm in aid of drug trafficking. *See id.* at 1141. *United States v. Bruce*, 939 F.2d 1053 (D.C.Cir. 1991), provides Williams with no refuge from this rule. There we held that a pistol and some ammunition found near a cache of drugs does not support a conviction for use of a firearm in aid of drug trafficking. We expressly distinguished, however, the single gun (and ammunition) there from the arsenal discovered in *Anderson*. *See id.* at 1056. The weapons cache found in Johnson's apartment makes *Anderson*, not *Bruce*, the controlling precedent in this case.

### IV. PROSECUTORIAL MISCONDUCT

■ Finally, the court must express its concern about the Government's prosecution of this appeal. Its brief contains at least five material misstatements of the record. First, the Government's brief claims that a checkbook found next to the telephone bill and the bank card in Elizabeth Johnson's bedroom belonged to Williams. Gov't Brief at 8. The record manifests that the checkbook belonged to Johnson and her son. Tr. 4/18/89 at 124, 129. Second, the Government's brief asserts that male clothing, approximately size 44, found in Johnson's bedroom, belonged to Williams. Gov't Brief at 8–9, 23. The record shows that the size of the male clothing found in the bedroom was un-

known. Tr. 4/17/89 at 96. While the record does indicate that size 44 clothing was discovered in the hall closet, it also indicates that size 44 was too large for Williams. *Id.* at 94–96. Third, the Government's brief claims that Officer Michael Will saw firearms being thrown from a window of the apartment. Gov't Brief at 7. The record reflects that Officer Will was *advised* that several articles had been thrown from a window. Tr. 4/18/89 at 40. Fourth, the Government's brief asserts that Williams stipulated that fingerprints taken from the ammunition box were his. Gov't Brief at 11. The record shows, and the Government has subsequently conceded, that Williams stipulated only as to the authenticity of his known inked fingerprints. Tr. 4/18/89 at 7. Finally, the Government's brief claims that six fingerprints lifted from the ammunition box matched the defendant's known fingerprints. Gov't Brief at 22. The record clearly shows, however, that the Government's fingerprint expert conclusively matched only one fingerprint from the ammunition box to Williams' known fingerprints. Tr. 4/18/89 at 12.

■ The number and character of these misrepresentations lead us to conclude that the Government's conduct has been irresponsibly careless at best or deliberately misleading at worst. A lawyer appearing before us has a duty to assert facts only if, after a reasonably diligent inquiry, he believes those facts to be true. *See* D.C. Rules of Professional Conduct Rule 3.3 cmt. 2 (Adopted by Order of the District of Columbia Court of Appeals, March 1, 1990).[1]

That the Government made these misstatements renders the conduct here even more *egregious*.

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose

---

1. Rule 3.3 provides in relevant part:
   (a) A LAWYER SHALL NOT KNOWINGLY:
   (1) MAKE A FALSE STATEMENT OF MATERIAL FACT OR LAW TO A TRIBUNAL. COMMENT [2]:
   An assertion purported to be made by the lawyer, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry. There may be circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation....

obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 803, 107 S.Ct. 2124, 2135, 95 L.Ed.2d 740 (1987) (quoting *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)). This court condemns unprofessional conduct by the Government whether it results from incompetence or manipulation.

We note that under the Federal Rules of Appellate Procedure and under the rules of this court, we are authorized to impose sanctions for the type of misstatements made here. *See* Fed.R.App.P. 46(c);[2] D.C.Cir.R. 23 & app. V.[3] We have decided not to exercise our authority in this case, however. We do not wish to penalize the inexperienced author of the misstatements, beyond this public reprimand, in view of the factual complexity of the case and the failure of the U.S. Attorney's Office adequately to involve trial counsel in the supervision of the case on appeal. For the future, the U.S. Attorney is on notice of the problem, and like any lawyer misleading the court, henceforth may expect to face the full extent of our sanction power.

## V. CONCLUSION

We find the evidence sufficient to support the jury's verdict that appellant Williams possessed a mixture containing cocaine base with the intent to distribute it and used a firearm in aid of such drug trafficking. Williams' convictions are therefore

*Affirmed.*

2. The Federal Rules of Appellate Procedure provide in relevant part:

> **Rule 46(c): Disciplinary Power of the Court over Attorneys**
> A court of appeals may, after reasonable notice and an opportunity to show cause to the contrary, and after hearing, if requested, take any appropriate disciplinary action against any attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with these rules or any rule of the court.

3. Our local rules state in relevant part:

> **Rule 23: Sanctions for Failure to Comply With Rules**
> When ... any attorney practicing before the Court fails to comply with the Federal Rules of Appellate Procedure or these Rules ... the Court may, on its own motion, or on motion of a party, impose appropriate sanctions on the offending party, the attorney or both.
> Sanctions include ... imposition of costs, expenses and attorneys' fees; and disciplinary proceedings.
> **Appendix V: Rules of Disciplinary Enforcement for the United States Court of Appeals for the District of Columbia Circuit**
> The United States Court of Appeals for the District of Columbia Circuit, in furtherance of its power and responsibility under Rule 46 of the Federal Rules of Appellate Procedure, and its inherent power and responsibility to supervise the conduct of attorneys who are admitted to practice before it, or are admitted for the purpose of a particular proceeding (*pro hac vice*), promulgates the following Rules of Disciplinary Enforcement.
> RULE I
> Standards for Professional Conduct
> A. For misconduct as defined in paragraph (B) below, or for failure to comply with these Rules or any rule or order of this Court, and after notice and opportunity to be heard, any attorney admitted to practice before this Court may be reprimanded (publicly or privately), suspended from practice before this Court, disbarred, or subjected to such other disciplinary action as the circumstances may warrant.
> B. Acts or omissions by an attorney admitted to practice before this Court, individually or in concert with any other person or persons, which violate any Code of Professional Responsibility or other officially-adopted body of disciplinary rules applicable to the conduct of the attorney constitute misconduct. The Code of Professional Responsibility adopted by this Court is the Code of Professional Responsibility adopted by the District of Columbia Court of Appeals, as amended from time to time by that Court, except as otherwise provided by specific Rule of this Court.
> (citations omitted).