**UNITED STATES of America, Appellee,**

v.

**Ramon MARTINEZ, Defendant–Appellant.**

**No. 164, Docket 94–1082.**

United States Court of Appeals, Second Circuit.

Argued Oct. 12, 1994.

Decided Jan. 4, 1995.

Mark B. Gombiner, New York City (Legal Aid Soc., New York City, on the brief), for defendant-appellant.

James A. Goldston, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., David B. Fein, Asst. U.S. Atty., New York City, on the brief), for appellee.

Before: NEWMAN, Chief Judge, WALKER and CALABRESI, Circuit Judges.

JON O. NEWMAN, Chief Judge:

This appeal presents a close question concerning the sufficiency of the evidence in a

narcotics distribution case. The precise issue is whether a defendant, clearly guilty of drug possession, has been properly convicted of possession *with intent to distribute* where the evidence showed that he possessed 3½ grams of cocaine and the only evidence of his intent to distribute this small quantity consisted of one-half ounce of a cutting agent, a small hand-held scale, and a gun. Ramon Martinez appeals from a judgment of the United States District Court for the Southern District of New York (Leonard B. Sand, Judge) convicting him, after a jury trial, of one count of possession of cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), one count of using and carrying a firearm in relation to a drug trafficking crime, 18 U.S.C. § 924(c), and one count of possession of a firearm by a felon, 18 U.S.C. § 922(g). For the reasons stated below, we conclude that the evidence of intent to distribute is insufficient, and we therefore vacate the convictions under 18 U.S.C. §§ 841(a)(1) and 924(c) and remand to the District Court for entry of a judgment of conviction for simple possession of cocaine, in violation of 21 U.S.C. § 844, and for resentencing.

## Background

Taken in the light most favorable to the Government, the evidence permitted the jury to find the following facts. In late March 1993, a confidential informant told the police that a man named "Juan" was dealing drugs out of Apartment 4E at 134 Elliott Place in the Bronx. Based on the informant's tip, officers of a joint federal-state task force obtained a "no knock" search warrant for Apartment 4E. On March 25, 1993, in preparation for executing the search warrant, Detective Gerard Gardiner and other law enforcement officers entered the building and set up a hydraulic ram in front of the door to the apartment. As the officers began breaking down the door, they heard a man inside, later identified as José Garcia, yell "policia" (Spanish for police) and saw a man, later identified as appellant Martinez, holding a gun.

Once inside the apartment, the officers observed only Garcia and Martinez. Garcia

was standing in the kitchen. Martinez began running to the back of the apartment, carrying the gun in his hand. Detective Gardiner pursued Martinez to the rear bedroom, where he witnessed Martinez throw the pistol out the window. Martinez then reached toward the groin area of his pants as if to remove something. The detective apprehended Martinez and seized from his person a black leather pouch containing five bags of white powder. One bag turned out to contain an eighth of an ounce (about 3½ grams) of cocaine, while the other four contained a total of one-half ounce of "cut," a non-narcotic powder commonly used to dilute cocaine. A further search of Martinez revealed a small hand-held scale capable of weighing amounts up to one gram.

Following Martinez's apprehension, Detective Gardiner searched Garcia, but found no contraband on Garcia's person. Gardiner acknowledged, however, that "to a very specific degree" Garcia matched the description of the dealer "Juan" given by the informant. Gardiner also learned at some point that "Juan" might be an alias for José Garcia. After taking Garcia into custody,[1] Gardiner and the other officers searched the apartment and found another eighth of an ounce of cocaine, a grinder, an electronic scale that could measure 100–gram quantities, a sifter used to mix cocaine with "cut," and tin foil. These items were in plain view on the living room table. In addition, the police discovered $1,078 in cash secreted inside the frame of a closet door.

At trial, Gardiner, testifying as an expert on narcotics trafficking, opined that the hand-held scale found on Martinez could be used to weigh small quantities of narcotics, like half-gram and gram amounts of cocaine, and that cocaine is commonly sold in half-gram and gram quantities at the retail level. He further explained that "cut" is usually mixed with cocaine "for the purpose of increasing the drug dealer's profits as well as making cocaine ingestible without poisoning the person who is ingesting it." On cross-examination, Gardiner admitted that the 3½ grams of drugs seized from Martinez were

---

1. For reasons not explained at trial, Garcia was subsequently released without being charged.

consistent with the quantities used by a cocaine addict. Other trial evidence also suggested that Martinez was a drug addict. In particular, the Government introduced evidence of a prior conviction, the sentence for which included a requirement that Martinez submit to urinalysis and drug counseling.

After the jury convicted Martinez on all three counts of the indictment, the District Court sentenced him to a total of 78 months in prison: concurrent 18–month terms for drug-trafficking and possession of a firearm by a felon, and a consecutive 60–month term for the section 924(c) firearms offense.

## Discussion

■ On appeal, Martinez contends that the evidence was insufficient to prove his intent to distribute cocaine. He argues that a finding of such intent may not be based on the 3½ grams of cocaine and the items in his possession, and that the additional 3½ grams of cocaine and the other items found on the table may not be attributed to him simply because he was on the premises. Applying the traditional test of whether "'the record evidence could reasonably support a finding of guilt beyond a reasonable doubt,'" *United States v. Jones*, 30 F.3d 276, 281 (2d Cir. 1994) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979)), we conclude that the evidence in this case was insufficient to prove intent to distribute.

■ The essential elements of possession of narcotics with intent to distribute are that a defendant knowingly possessed a quantity of drugs and that he did so with the specific intent to distribute them. *See, e.g., United States v. Latham*, 874 F.2d 852, 863 (1st Cir.1989); *United States v. Clark*, 475 F.2d 240, 248–49 & n. 10 (2d Cir.1973). The element of possession may be satisfied by either actual or constructive possession of the narcotics, *see United States v. Gordils*, 982 F.2d 64, 71 (2d Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1953, 123 L.Ed.2d 657 (1993); *United States v. Nusraty*, 867 F.2d 759, 766 (2d Cir.1989), and both possession and intent may be established by direct or circumstantial evidence, *see United States v. Sureff*, 15 F.3d 225, 228 (2d Cir.

1994); *United States v. Castro*, 813 F.2d 571, 578 (2d Cir.), *cert. denied*, 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987).

■ 1. *The items in Martinez's actual possession.* We consider initially the items in Martinez's actual possession—the 3½ grams of cocaine, the one-half ounce of "cut," the one-gram scale, and the pistol. Our cases hold that in a prosecution under 21 U.S.C. § 841, the quantity of drugs involved is not an element of the crime. *See United States v. Monk*, 15 F.3d 25, 27 (2d Cir.1994). Thus, no minimum quantity has been established as a necessary part of the proof to sustain a conviction for possession of drugs with intent to distribute. Possession of a small quantity, with substantial evidence of intent to sell, would suffice. On the other hand, it is clear that a small amount of narcotics, standing alone, is insufficient evidence of an intent to distribute. In *Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), all nine Justices agreed that possession of 14.68 grams (four times the quantity found on appellant) of a cocaine and sugar mixture was an insufficient basis for concluding that the defendant was distributing cocaine. *Id.* at 423, 90 S.Ct. at 655; *id.* at 424, 90 S.Ct. at 656 (Marshall, J. concurring in the judgment); *id.* at 425, 90 S.Ct. at 656 (Black, J., with whom Douglas, J., joins, dissenting in part). We have also ruled that possession of small quantities of cocaine is insufficient to prove intent to distribute. *United States v. Boissoneault*, 926 F.2d 230, 234 (2d Cir.1991) (5.31 grams (.19 ounce) of cocaine and a few other items); *United States v. Gaviria*, 740 F.2d 174, 184 (2d Cir.1984) (seven grams (twice the quantity found on appellant) of cocaine); *see United States v. Garcia–Duarte*, 718 F.2d 42, 47 (2d Cir.1983) (suggesting that .23 grams of cocaine was enough to support possession without intent to distribute); *see also United States v. White*, 969 F.2d 681, 684 (8th Cir. 1992); *United States v. Garrett*, 903 F.2d 1105, 1113 (7th Cir.), *cert. denied*, 498 U.S. 905, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990); *Latham*, 874 F.2d at 863 (inference of intent to distribute not warranted from possession of one ounce of cocaine (eight times the quantity found on appellant)).

■ Although we have suggested that as little as four or five grams of narcotics might be a distributable amount under particular circumstances, *see United States v. Peterson*, 768 F.2d 64, 66 n. 1 (2d Cir.) (citing *United States v. Ramirez*, 608 F.2d 1261, 1264 (9th Cir.1979)), *cert. denied*, 474 U.S. 923, 106 S.Ct. 257, 88 L.Ed.2d 264 (1985); *see also United States v. Bautista*, 23 F.3d 726, 729, 734 (2d Cir.) (affirming conviction for possession with intent to distribute .477 grams of cocaine, although sufficiency of evidence was not challenged on appeal), *cert. denied*, —— U.S. ——, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994), where the quantity of drugs is small, there must be additional evidence from which a plan or intent to distribute is fairly inferable. *See Boissoneault*, 926 F.2d at 234; *Ramirez*, 608 F.2d at 1264.

In this case, the only disputed issue was whether Martinez had the intent to distribute cocaine. The Government's theory was that Martinez was a user who, like many users, was also a seller. The defendant's theory was that he was only a user. In fact, there was conflicting evidence concerning his use of narcotics. Pointing towards his being a user was the small quantity in his possession, his one-gram scale, and the direction in his prior sentence that he submit to urinalysis. Contrary evidence was Detective Gardiner's testimony that, after the arrest, Martinez "indicated" that he did not use drugs. In any event, as the case was submitted to the jury, the Government did not dispute that Martinez was a drug user. In the rebuttal summation, the prosecutor said:

> The evidence, ladies and gentlemen, is that the defendant was a seller. The government does not dispute he may also have been a user of cocaine, but you heard testimony that users of cocaine also sell cocaine. And that shouldn't be surprising to you.

So the issue for the jury was whether the evidence proved *beyond a reasonable doubt* that this cocaine user was also a seller. And the issue for us is whether the jury "reasonably," *Jackson*, 443 U.S. at 318, 99 S.Ct. at 2788, could so find.

The core of the Government's evidence was the 3½ grams of cocaine found on Martinez's person. The other evidence included the testimony that Martinez possessed, at the time of his arrest, (1) a small hand-held scale measuring up to one gram, (2) four bags of "cut," and (3) a firearm. Though the jury was entitled to consider the evidence collectively, *see United States v. Mariani*, 725 F.2d 862, 865–66 (2d Cir.1984), the few items of evidence that are even remotely probative of intent to distribute need to be discussed individually in order to determine whether, collectively, they may be said to permit a finding that satisfies the "reasonable doubt" standard.

As the Government's expert admitted, the quantity of cocaine at issue was consistent with personal use. *See Boissoneault*, 926 F.2d at 234 (amount of cocaine "not inconsistent with personal use"). In light of Detective Gardiner's testimony that cocaine is usually purchased at street level in gram and half-gram quantities, the jury had no evidence that showed that the one-gram scale was more likely used *by Martinez* to measure quantities for distribution than to measure quantities for personal use.

The one-half ounce of "cut" possessed by Martinez was also not shown by any evidence to be more consistent with distribution than with purchase and use. The Government offered testimony that "cut" is mixed with cocaine to serve either of two purposes; it may increase profits for a drug dealer and it may make cocaine ingestible for a drug user. However, the Government presented no evidence that the quantity of "cut" possessed by Martinez, one-half ounce, was more than a user would normally need for ingestion of the one-eighth ounce of cocaine in his possession. There is no evidence as to whether a four-to-one ratio of "cut" to cocaine is more than normal, normal, or less than normal. The Government's expert witness on drugs told the jury nothing that would lead them to believe that the "cut" in Martinez's possession was more than he needed for personal use of his 3½ grams of cocaine.

■ Finally, the fact that Martinez possessed a gun, while somewhat probative of an intent to distribute, does not carry this thin case over the line at which a reasonable jury could find guilt beyond a reasonable doubt.

The fact that evidence is admissible and probative of an element does not necessarily mean that it suffices to permit the element to be reasonably found beyond a reasonable doubt. *See Boissoneault,* 926 F.2d at 234–35; *United States v. Young,* 745 F.2d 733, 766 (2d Cir.1984) (Newman, J., concurring), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985). We are mindful of our observation in *Boissoneault* that "evidence that [defendant] owned a gun or other weapon ... would have helped sustain an inference that he was engaged in the dangerous business of drug trafficking." 926 F.2d at 234. However, such an inference may not be reasonable when the Government fails to establish any nexus between the gun and the drug trafficking activity. *Cf. United States v. Lasanta,* 978 F.2d 1300, 1308–09 (2d Cir. 1992) (evidence that defendant used firearm during and in relation to drug trafficking crime insufficient, where agents had recovered loaded revolver from defendant's car door at some time during heroin and cocaine conspiracy); *United States v. Feliz–Cordero,* 859 F.2d 250, 254 (2d Cir.1988) (evidence of presence of firearm stashed in dresser drawer and not quickly accessible insufficient to find intent to use gun for purposes of section 924(c)). *But cf. United States v. Fermin,* 32 F.3d 674, 678 (2d Cir.1994) ("This Circuit will sustain a section 924(c) conviction if the evidence shows that a defendant strategically placed a weapon so as to enable ready access to it during a drug transaction."). There is no evidence that Martinez's possession of a gun had anything to do with drug distribution activity, as opposed to offering protection during his drug purchases (or perhaps facilitating some other criminal activity in which Martinez might have been involved). We have no reason to doubt that a drug purchaser is as likely to be armed as a drug seller.

■ Whether the small quantity of cocaine and the other three items collectively permit a finding of intent to distribute is a close question. Surely the evidence is as consistent with Martinez's being a purchaser as with his being a seller. It is true, of course, that a jury is entitled to draw inferences and, upon review of a guilty verdict, we are to assume that the jury drew in the Government's favor all the reasonably available inferences. But those axioms do not mean that every case in which there is some minimal evidence of guilt permits a jury reasonably to find guilt beyond a reasonable doubt. The line between permissible inference-drawing and impermissible speculation is often difficult to locate, especially in cases like this one where the disputed element is state of mind. But the inability of juries to look inside a mind and determine intent with the same confidence that normally attends their determination of physical events does not relieve courts of their duty to enforce the sufficiency threshold that governs the reasonable doubt standard. If anything, the inevitable uncertainty as to fact-finding about mental states should add rigor to the judicial function.

It is not for us to draw the inference that Martinez is *not* a seller. But it is our task to determine whether the scant evidence of intent in this case permitted the jury reasonably to find beyond a reasonable doubt an intent to sell. If we were to say that it did, we would be permitting the conviction for selling of virtually any armed drug user found with ingredients for personal use of drugs. When Congress establishes penalties that punish selling drugs fifteen times more severely than possessing drugs, we must be careful not to use the incantation of inference-drawing to let juries make what in this minimal case would be essentially a guess that the appellant had the intent to sell. The earlier view that evidence sufficient to take a case to a jury need have no greater persuasive force in criminal cases than in civil cases, *see United States v. Feinberg,* 140 F.2d 592, 594 (2d Cir.) (L. Hand, J.), *cert. denied,* 322 U.S. 726, 64 S.Ct. 943, 88 L.Ed. 1562 (1944), has long since been displaced by the recognition that assessment of sufficiency in a criminal case must be related to the "reasonable doubt" standard. *See United States v. Taylor,* 464 F.2d 240, 242 (2d Cir.1972) (Friendly, J.).

■ 2. *The items alleged to have been constructively possessed.* Perhaps recognizing the thinness of its proof based on items Martinez actually possessed, the Government

vigorously contends that he could permissibly be found to have constructively possessed the items found on the table in Apartment 4E. To prove that a defendant constructively possessed narcotics or narcotics paraphernalia, the Government must establish that the defendant " 'knowingly [had] the power and the intention at a given time to exercise dominion and control over [these] object[s].' " *United States v. Tribunella*, 749 F.2d 104, 111–12 (2d Cir.1984) (quoting *United States v. Craven*, 478 F.2d 1329, 1333 (6th Cir.), *cert. denied*, 414 U.S. 866, 94 S.Ct. 54, 38 L.Ed.2d 85 (1973)); *see Gordils*, 982 F.2d at 71. Although we have recently stated that presence at a given location under a particular set of circumstances may permit a reasonable jury to conclude that a defendant possessed the drugs found at that site, *see Gordils*, 982 F.2d at 71; *United States v. Soto*, 959 F.2d 1181, 1185 (2d Cir.1992), it remains true that "mere presence," without more, does not establish a defendant's possession, *United States v. Rios*, 856 F.2d 493, 496 (2d Cir. 1988). To demonstrate constructive possession of contraband discovered in particular premises, the Government must prove that the defendant was more than a "mere visitor." *Id.*

■ In this case, the Government has failed to meet its burden of proof. The Government was unable to present any evidence connecting Martinez to Apartment 4E or its contents, other than his presence on the day of the arrest. Nothing in the record suggests that Martinez was the lessee of the apartment. While legal ownership of the property in which contraband is discovered is not essential to a finding of constructive possession, *see, e.g., Garrett*, 903 F.2d at 1112 n. 8 (citing Second Circuit cases), there must be other indicia of "dominion or control" to sustain that finding. Such indicia are absent here. There were no documents or records in the apartment bearing Martinez's name or suggesting that he was a resident there. *Cf. United States v. Schubel*, 912 F.2d 952, 956 (8th Cir.1990) (documents pertaining to defendant—including check stubs, telephone bill, and customer receipts—found in house permitted finding of constructive possession of contraband on second floor of house). Similarly, the identification carried by Mar-

tinez did not link him to the apartment, and he was not carrying any keys to the apartment door. *Cf. United States v. Brett*, 872 F.2d 1365, 1369 (8th Cir.) (possession of key sufficient evidence to prove possession of house containing drugs), *cert. denied*, 493 U.S. 932, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989); *Garrett*, 903 F.2d at 1112 (possession and use of car key sufficient to prove possession of drugs in car). In fact, no one testified to having even seen Martinez at Apartment 4E on any prior occasion. Furthermore, significant evidence pointed to José Garcia as the person who controlled the apartment. Garcia matched, to a "very specific degree," the description of "Juan," who had been reported to be dealing drugs out of 134 Elliott Place, Apartment 4E, and Garcia may have used the name "Juan" as an alias.

■ The Government seeks to bolster its claim of constructive possession by relying on the gun that Martinez threw out the apartment window. The Government cites cases from other circuits suggesting that possession of a firearm in proximity to drugs, or the attempt to dispose of a weapon in response to a police raid, might provide the evidentiary link necessary for a finding of constructive drug possession. *See United States v. Boykins*, 9 F.3d 1278, 1283 (7th Cir.1993); *United States v. Williams*, 952 F.2d 418, 420 (D.C.Cir.1991), *cert. denied*, — U.S. —, 113 S.Ct. 148, 121 L.Ed.2d 99 (1992); *United States v. Dunn*, 846 F.2d 761, 764 (D.C.Cir. 1988) ("[Defendant's] connection to the gun suggests he exercised control over the drugs in the house."). However, we have never allowed an inference of constructive possession of drugs in premises to which a defendant is otherwise unconnected based simply on a defendant's presence there with a gun, and we do not think such an inference is permissible on the facts of this case. Though a gun has been recognized as "a tool of the [narcotics] trade," *Schubel*, 912 F.2d at 956, and is often admissible to link a defendant to drug activity, it does not follow that the possession of a gun suffices to prove constructive possession of whatever drugs are on the premises where an armed defendant is present. An addict may well think it pru-

dent to arm himself when coming to a drug seller's apartment to purchase drugs.

In arguing that Martinez had dominion and control over the contraband, the Government relies on our decisions in *United States v. Gordils, supra,* and *United States v. Soto, supra.* Those decisions are significantly different. In *Gordils,* 982 F.2d at 71, we upheld the conviction of a defendant for possession with intent to distribute, on a theory of constructive possession, where the defendant had been left alone in an apartment with sole responsibility for guarding the premises and its drug contents. Martinez enjoyed no such independence or responsibility. In *Soto,* 959 F.2d at 1185, we concluded that a jury could reasonably have inferred that the defendant possessed cocaine with intent to distribute from the fact that he was an outsider allowed access to an apartment with a large-scale cocaine operation going on in plain view. We thought the jury could reasonably infer that only trusted members of a narcotics ring would be permitted entry into an obviously sensitive packaging area. *See id.* We carefully noted, however, that the evidence in that case established that the defendant "was present not as a mere purchaser." *Id.*

On this record, by contrast, the Government has not presented evidence to show that Martinez, who the Government did not dispute was a drug user, was at Apartment 4E for any purpose other than to purchase drugs. Were we to sustain Martinez's conviction, we would risk subjecting any drug user who happened to purchase his supply at a distribution point, rather than on the street, to the more serious penalties that Congress intended for manufacturers and distributors of narcotics. *See United States v. Swiderski,* 548 F.2d 445, 450 (2d Cir.1977) (stating that Congress's reasoning in imposing more severe penalties for drug trafficking "was that such conduct tends to have the dangerous, unwanted effect of drawing additional participants into the web of drug abuse"). Because the Government has provided insufficient evidence to show anything more than Martinez's status as a user, we are unwilling to take that step here. The proof is too thin for a finding of constructive possession of the items in the apartment, and

without these items, it is too thin for a jury reasonably to find intent to distribute beyond a reasonable doubt.

3. *Appropriate disposition.* We next consider the proper disposition. There is no dispute that Martinez actually possessed the 3½ grams of cocaine found on his person. Therefore, in vacating his conviction on the section 841(a)(1) count for insufficiency of the evidence of intent to distribute, we will remand to the District Court to enter a judgment of conviction for simple possession of cocaine, in violation of 18 U.S.C. § 844. *See Boissoneault,* 926 F.2d at 235; *Swiderski,* 548 F.2d at 452. Although the Government did not charge Martinez with simple possession, conviction is warranted because the jury necessarily found all the elements of this lesser-included offense. *See Boissoneault,* 926 F.2d at 235; *Garcia–Duarte,* 718 F.2d at 47. Moreover, Martinez does not object to a finding of guilt for simple possession.

Because the only crimes for which Martinez can be convicted are simple possession of a controlled substance and possession of a firearm by a felon, Martinez's conviction under 18 U.S.C. § 924(c) cannot stand. Section 924(c)(1) provides an enhanced sentence of five-years' imprisonment when a defendant uses or carries a firearm during and in relation to any "drug trafficking crime." 18 U.S.C. § 924(c)(1). A drug trafficking crime, as defined in section 924(c)(2), means any felony punishable, among other statutes, under the Federal Controlled Substances Act, 21 U.S.C. § 801 *et seq. See* 18 U.S.C. § 924(c)(2); *United States v. Polanco,* 29 F.3d 35, 38 (2d Cir.1994). On remand, Martinez will be convicted of simple possession of cocaine, in violation of 21 U.S.C. § 844. While section 844 is part of the Controlled Substances Act, simple possession of cocaine is not a felony under federal law. *See* 21 U.S.C. § 844 (providing for a term of imprisonment of not more than one year as a penalty for simple possession); 21 U.S.C. § 802(13) (defining a "felony" for purposes of the Controlled Substances Act as "any Federal or State offense classified by applicable Federal or State Law as a felony"); 18 U.S.C. § 1 (classifying felonies as offenses

"punishable by death or imprisonment for a term exceeding one year"). Thus, possession of cocaine cannot be a predicate offense for purposes of section 924(c). *Cf. United States v. Knox,* 950 F.2d 516, 518 (8th Cir.1991) (holding that simple possession of more than five grams of crack (cocaine base), which carries a penalty of not less than five nor more than 20 years' imprisonment, *see* 21 U.S.C. § 844, is a drug trafficking offense on which a section 924(c) conviction was properly predicated).

Reversing the convictions under 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 924(c), we also remand for resentencing. We assume that Martinez's principal interest in this appeal is the mandatory five-year consecutive sentence that section 924(c) carries. *See* 18 U.S.C. § 924(c); U.S.S.G. § 3D1.1(b) & comment (n. 1); *id.* § 5G1.2(a). Obviously, that sentence must be vacated. On remand, the District Court should calculate Martinez's sentence based only on his convictions for simple possession of cocaine and possession of a firearm by a felon.

### Conclusion

For the foregoing reasons, Martinez's convictions for possession of cocaine with intent to distribute and possession of a firearm in connection with a drug trafficking crime are reversed, and the case is remanded to the District Court for entry of a judgment of conviction for possession of cocaine in violation of 21 U.S.C. § 844, and for resentencing. Conviction on the section 922(g) count is affirmed.

WALKER, Circuit Judge, dissenting:

In my view, the evidence was more than sufficient to establish Martinez's guilt on Count One of possession with intent to distribute cocaine.

It is well settled that a defendant seeking to overturn a conviction based upon insufficiency of the evidence bears a "heavy burden." *United States v. Sureff,* 15 F.3d 225, 228 (2d Cir.1994); *United States v. Casamento,* 887 F.2d 1141, 1156 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990). Not only must the evidence be viewed in the light most favorable to the government and all permissible inferences drawn in its favor, *United States v. Nersesian,* 824 F.2d 1294, 1302 (2d Cir.), *cert. denied,* 484 U.S. 957, 108 S.Ct. 355, 98 L.Ed.2d 380 (1987), but if the evidence, thus construed, suffices to convince any rational trier of fact beyond a reasonable doubt, then Martinez's conviction must stand. *United States v. Resto,* 824 F.2d 210, 212 (2d Cir. 1987) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). The government's case need not exclude "every possible hypothesis of innocence," *United States v. Friedman,* 998 F.2d 53, 59 (2d Cir.1993) (quoting *United States v. Soto,* 716 F.2d 989, 993 (2d Cir.1983)), and it is the task of the jury, not the court, to choose among competing inferences. *United States v. Stanley,* 928 F.2d 575, 577 (2d Cir.), *cert. denied,* 502 U.S. 845, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991). The jury's verdict may be based entirely on circumstantial evidence. *United States v. Libera,* 989 F.2d 596, 601 (2d Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993).

I fully agree that the possession of a small quantity of drugs standing alone is insufficient to prove an intent to distribute. *Turner v. United States,* 396 U.S. 398, 422–23, 90 S.Ct. 642, 655–56, 24 L.Ed.2d 610 (1970) (14.68 grams insufficient); *United States v. Boissoneault,* 926 F.2d 230, 234 (2d Cir.1991) (5.31 grams); *United States v. Gaviria,* 740 F.2d 174, 184 (2d Cir.1984). But, since the statute specifies no minimum amount, any amount of drugs, however small, will support a conviction where there is additional evidence of intent to distribute. *See United States v. Ramirez,* 608 F.2d 1261, 1264 (9th Cir.1979) ("[W]here there is other evidence of ... intent to distribute, possession of as small a quantity as 4 or 5 grams is sufficient to establish an intent to distribute...."); *United States v. Peterson,* 768 F.2d 64, 66 n. 1 (2d Cir.) (3.8 grams of heroin; citing *Ramirez* with approval), *cert. denied,* 474 U.S. 923, 106 S.Ct. 257, 88 L.Ed.2d 264 (1985).

In this case, there was ample additional evidence from which intent to distribute may fairly be inferred. It is only by separating out the several items of evidence and impermissibly drawing inferences from each in fa-

vor of the defendant that the majority is able to argue that the evidence is insufficient. Yet, as the majority concedes, the evidence must be viewed in its totality, *United States v. Mariani,* 725 F.2d 862, 865, 866 (2d Cir. 1984), and, more importantly, on appeal all inferences must be drawn in the government's favor, not the defendant's. *Sureff,* 15 F.3d at 228.

The jury was carefully instructed by an able district judge on both the elements of possession with intent to distribute and the elements of the lesser included offense of simple possession. Indeed, the principal question for the jury to resolve was whether the defendant intended to distribute the cocaine found on his person or in the apartment. From all of the evidence, permissible inferences could be drawn in either direction. The jury considered this evidence and drew inferences in the government's favor, as it was entitled to do. Now on appeal the majority draws them in the defendant's favor. I happen to think the inferences in the government's favor were more appropriate, but even if, like the majority, I thought otherwise, I would affirm. The job of picking among competing inferences is for the jury, not the court. *Stanley,* 928 F.2d at 577 ("Although appellant suggests competing inferences and explanations, it is the jury's task, not ours, to choose among them.").

At the outset, I take sharp issue with the majority's view that "the government's theory was that Martinez was a user who, like many users, was also a seller." Ante at 152. The evidence on whether Martinez was a user was in conflict and the government articulated no such "theory." The majority rests its conclusion solely upon the government's rebuttal statement that it did "not dispute [Martinez] *may* also have been a user of cocaine" as well as a seller (emphasis added). But the government was merely responding to the defense's candid recognition in its summation that there was conflicting evidence on the point. The government's theory was simply that Martinez was a seller, whether or not he was also a user. At trial, the defendant, who rested without putting on a case, offered no proof on the issue. His lawyer was only able to point to a judgment

of conviction entered in May, 1988, five years before defendant's arrest here. The judgment had been offered by the government to prove defendant was a felon in possession of a firearm and contained, as part of the sentence, a directive that defendant participate in a program of urinalysis testing, and if necessary, drug treatment. The government, however, brought out that the defendant flatly denied that he was a drug user when he was arrested in March, 1993. Detective Gardiner, who arrested and processed the defendant, testified at trial as follows:

Q. Detective, I want to clarify a matter that was raised on cross.
I am giving you 3501 M. Review that. Do you recall what response the defendant gave when he was asked whether he used any drugs?
A. Yes.
Q. What did the defendant say?
A. He indicated to me that he did not. (Tr. 94)

I mention this because the "fact" of Martinez's drug abuse trumpeted by his counsel at trial and on appeal and treated by the majority's opinion as a given was an open question that the jury was entitled to determine in the government's favor.

The evidence at the time Martinez was arrested was straightforward and can be briefly stated. When the officers forcibly entered the apartment through the door to the living room, Martinez was standing in the room holding a loaded gun. A co-defendant, Garcia, was standing unarmed in the kitchen. Martinez immediately ran to the back of the apartment to a rear bedroom, where he threw his gun out of the window. The police apprehended and searched Martinez. They seized from Martinez's person a black leather pouch containing five bags of white powder, one of which contained an eighth of an ounce (or three and one-half grams) of cocaine. The other four contained a total of one-half ounce of "cut" used to dilute cocaine. He also possessed on his person a small hand-held scale capable of weighing amounts up to one gram. In the living room where Martinez was standing holding a gun when the officers entered, there was in plain view on a table another eighth of an ounce of cocaine, a

grinder, an electronic 100–gram scale, tin foil, and a sifter used to mix cocaine with cut. Officers also seized $1,078 in cash from a closet near the rear bedroom. An informant had identified the apartment searched—Apartment 4E at 134 Elliott Place—as belonging to a man named "Juan." At trial, an officer testified that Garcia fit the description of "Juan" to a "very specific degree." After his arrest, Garcia gave his address as 130 Elliott Place, not 134 Elliott Place, where the arrests took place.

Even if Martinez were a drug user at the time of his 1993 arrest, his physical possession of scales, cut, and a loaded firearm easily supported the jury's rejection of his personal-use defense. "Possession of equipment to weigh, cut and package drugs is highly probative of a purpose to distribute." *United States v. Pugh*, 566 F.2d 626, 628 (8th Cir.1977), *cert. denied*, 435 U.S. 1010, 98 S.Ct. 1885, 56 L.Ed.2d 393 (1978). The majority chooses to infer that the one-gram scale "[points] towards his being a user," *ante* at 152, notwithstanding that the three and one-half grams in his possession was an amount too great for his one-gram scale and could easily have been verified on the 100–gram scale, and notwithstanding credible testimony that street sales of one-half and one gram were common. The record thus belies the majority's claim that "the jury had no evidence that showed that the one-gram scale was more likely used *by Martinez* to measure quantities for distribution than to measure quantities for personal use," *ante* at 152. The majority also infers improbably that Martinez's possession of cut was consistent with drug purchasing despite credible testimony at trial that cut was used to increase seller's profits and reduce toxicity. Moreover, while tin foil, used to package cocaine for sales to user customers, was found on the living room table, none of the drugs found on Martinez was so wrapped.

Finally, Martinez's possession of the loaded firearm by itself provided credible evidence of Martinez's intent to distribute. *See, e.g., United States v. White*, 969 F.2d 681, 684 (8th Cir.1992) ("Because a gun is generally considered a tool of the trade for drug dealers, [it] is also evidence of intent to dis-

tribute' " (quoting *United States v. Schubel*, 912 F.2d 952, 956 (8th Cir.1990))); *United States v. Garrett*, 903 F.2d 1105, 1113 (7th Cir.) (loaded pistol found directly underneath bag containing a small amount of cocaine was, together with other factors, sufficient to infer intent to distribute, and supported conviction for possession with intent to distribute), *cert. denied*, 498 U.S. 905, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990); *United States v. Rush*, 890 F.2d 45, 49, 52 (7th Cir.1989) (loaded weapon found in car defendant was walking toward when arrested was relevant evidence in prosecution for possession of heroin with intent to distribute; weapon was a "'tool' of the trade," and was an "essential part of the crime of possession with intent to distribute"); *United States v. Dunn*, 846 F.2d 761, 764 (D.C.Cir.1988) (as a "tool[ ] of the narcotic trade," loaded gun found on couch near defendant supported inference of intent to distribute where defendant constructively possessed drugs in house); *United States v. Matra*, 841 F.2d 837, 841 (8th Cir.1988) (intent to distribute may be inferred from, among other things, the presence of firearms).

The majority concedes that Martinez's possession of a gun was "somewhat probative" of intent to distribute, *ante* at 152, and candidly acknowledges, *ante* at 153, that in *Boissoneault* we said that the presence of a weapon would "help[ ] sustain an inference that [defendant] was engaged in the dangerous business of drug trafficking," 926 F.2d at 234. But it argues, that the government "fail[ed] to establish any nexus between the gun and the drug trafficking activity." *Ante* at 153. However, this is not a case like *United States v. Lasanta*, 978 F.2d 1300 (2d Cir.1992), or *United States v. Feliz–Cordero*, 859 F.2d 250 (2d Cir.1988), cited by the majority, where the gun was physically removed in time or place from the activity in question or was otherwise not quickly accessible. Here the defendant whose drugs were concealed on his person was holding a loaded firearm when the officers entered the apartment. The majority's conclusion that the gun was to protect his purchase or "some other criminal activity," *ante* at 153, is no more warranted than the inference that the jury was entitled to draw, and the caselaw supports, that the

gun was to protect his activity as a trafficker of drugs.

In short, this is not a case like *Boissoneault* where there was no additional evidence beyond the possession of the amount of drugs in question from which intent could be inferred. We stated in *Boissoneault:*

> At the time of his arrest, Boissoneault possessed none of the paraphernalia usually possessed by drug dealers, such as scales, beepers, and other devices, nor did he possess any of the materials needed to process cocaine or to package it in druggist folds. Nor was there any evidence that Boissoneault owned a gun or other weapon, which would have helped sustain an inference that he was engaged in the dangerous business of drug trafficking.

926 F.2d at 234.

In this case the opposite is true. The defendant possessed drug paraphernalia, namely, scales and cut, as well as a gun from which "an inference that he was engaged in the dangerous business of drug trafficking," *id.,* could properly be drawn.

The majority's contention that the only reasonable inference is that Martinez was purchasing for his own use from Garcia is untenable. The jury could easily have concluded beyond a reasonable doubt that both men were dealers: that Martinez had just bought his cocaine from Garcia to deal on the street, or that Garcia was the front man who rented the apartment as part of a joint distribution enterprise that Martinez was protecting with his gun against intruders (until he saw the police). Since there is no burden on the government to exclude "every possible hypothesis of innocence," *Friedman,* 998 F.2d at 59, and the choice among competing inferences is for the jury and not the court, *Stanley,* 928 F.2d at 577, the resolution of which scenario to credit should properly be left to the jury.

Because the defendant has not overcome the "heavy burden" of showing that the evidence was insufficient for the jury to reject his personal-use defense and to find that he possessed cocaine with intent to distribute, and because on appeal the government is entitled to the benefit of inferences in its favor, I would affirm the conviction of Martinez on all counts.

I respectfully dissent.